E. L. MARTIN & Co., Respondents, v. T. I. JOHNSON, Defendant; JOSEPH S. JOHNSON, Interpleader, Appellant.

### Kansas City Court of Appeals, June 30, 1886.

1. ESTOPPEL—CREDITOR AND DEBTOR—COURSE OF BUSINESS—CASE ADJUDGED.—Where the interpleader, as in this case, transferred to defendant two note for the purpose of enabling him to effect a settlement with plaintiffs (who had brought suit against defendant in attachment), and defendant had used them for that purpose, and there was no evidence that plaintiffs had any *knowledge* of the purpose or arrangement between interpleader and defendant, but took them in the usual course of business in part payment of the debt of defendant ; there was no estoppel as against plaintiffs. The creditor, to be affected with any equities between the debtor and the party from whom he obtains the property, thus transferred to the creditor, must have *knowledge* of the facts and circumstances under which the same was obtained.

2. PRACTICE—ISSUES—INSTRUCTIONS—CASE ADJUDGED.—Where the issues, as in this case, allege fraudulent collusion between the defendant and interpleader, it is error to ignore these issues in the instructions, and such instruction was properly denied in this case.

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, Judge.

*Affirmed.*

The case and facts are stated in the opinion.

SAMUEL P. SPARKS, for the appellant.

I. The sale of the property was clearly within the exception of section 2505, Revised Statutes. The instrument was recorded within a reasonable time, and the recording of it obviated the necessity of any change in the possession. *Bishop v. McConnell*, 56 Mo. 158.

II. The sale of the property to interpleader was not fraudulent as to plaintiffs, for it was made subsequent to the suing out of the attachment, and for plaintiffs'

benefit. There was no withdrawing of the property from the reach of creditors. *Gutzweiler v. Lackman*, 23 Mo. 168; Bump on Fraud. Conv. (2 Ed.) 19–26.

III. The evidence was uncontradicted that, at the time of sale, and down to the time of execution of lease to defendant, the saloon was in possession of one Carey There was no change in the possession necessary, as between vendor and vendee. *Erwin v. Arthur*, 61 Mo. 386.

IV. The court erred in not allowing interpleader to show that, at the time the lease was filed for record, no seizure had been made under the attachment, *i. e.*, the court erred in not permitting him to contradict the return of the sheriff as to the time of the attachment. *Burgerl v. Borchert*, 59 Mo. 80.

GAGE, LADD & SMALL, for the respondents.

I. The proposition embraced in instruction number four, refused appellant, was already fully and fairly declared in other instructions.

II. Section 2505, Revised Statutes (requiring an actual change of possession within a reasonable time) has no application to this case, *as regards the lease*. But the *recording* of the lease from the interpleader to defendant could not have supplied the failure to meet the requirements of the statute as to a change of possession. Even a bill of sale *recorded* would have been no substitute for a change of possession.

III. The notes taken by plaintiffs from defendants, as payment on his indebtedness, in absolute ignorance of interpleader's dealings with defendant concerning them, everything indicated, at that time, that the notes were, and always had been, the property of defendant. Having taken then in entire *innocence*, they are not precluded from attacking for fraud the validity of the transfer of the property for which they are now alleged to have been the consideration. To be *estopped* from asserting the fraudulent nature of. a transaction, the creditor must

·either have been a party to it, or he must *knowingly* have received the benefits of it. *Neither fact exists here. Hathaway v. Brown*, 22 Minn. 214; *Baldwin v. Tuttle*, 23 Ia. 72; *McFarlane v. Fouke*, 1 Watts & Serg. (Pa.) 297.

IV. The testimony as to the sheriff's *return* was properly excluded, for the reason that it was wholly *immaterial*. The date of the levy was immaterial; the recording, or the failure to record, the lease, could have no effect upon the case.

PHILIPS, P. J.—This was an action by attachment, begun by plaintiffs E. L. Martin & Co., against the defendant T. I. Johnson. The defendant seems not to have made any defence to the attachment, but the said Joseph S. Johnson, who is the brother of T. I. Johnson, interposed an interplea, claiming that he was the owner of the property attached. The evidence showed that the property in question consisted of a counter and work bench, two side boards, one good ice chest, and one old ice chest. This property was kept and used in a saloon owned and run by defendant T. I. Johnson, in the town of Holden, in Johnson county, up to January, 1885, as the evidence shows, without any dispute. About that time, T. I. Johnson was pressed by some creditor, and the evidence tended strongly to show that he thereupon let the saloon to one Carey, to run in his (Carey's) name, but, as a matter of fact, the possession of Carey was only colorable, and T. I. Johnson remained the real owner. The evidence, while it tended to show that the interpleader, Joseph S. Johnson, was the owner of the house and lot in which the saloon was situate, it is most questionable whether or not the same did not in reality belong to T. I. Johnson. At all events, T. I. Johnson always claimed to be owner, and he never seems to have paid any rent to his brother therefor.

. On the seventh day of April, 1885, the plaintiffs sued out a writ of attachment in aid of their action against

said T. I. Johnson, to recover a large amount of indebted-
ness owing them by T. I. Johnson. On the day follow-
ing, when the plaintiffs went with the sheriff to execute
this writ on the goods in question, at the instance of the
defendant, who was the ostensible owner, the execution
of the writ was postponed to enable the defendant to go
to Kansas City, where the plaintiffs reside, under a
promise to satisfactorily arrange the matter with them.
He accordingly did go to see them, and turned over to
them two promissory notes, aggregating four hundred
dollars, secured by deed of trust on real estate in Holden,
and also some whiskey, leaving still a considerable bal-
ance unpaid on plaintiffs' claim. He, also, then prom-
ised to arrange the balance. Failing to do so, on the
twenty-first day of April following, the plaintiffs exe-
cuted said writ of attachment by having the sheriff seize
the said property in said saloon.

The interpleader claimed that, on the said eighth day
of April, his brother, T. I. Johnson, came to him to get
the money with which to settle with the plaintiffs, in
order to stop said attachment proceedings, and that he
then turned over to him the two notes aforesaid. That
the said notes were originally made payable to the said
T. I. Johnson, from whom he bought them, or obtained
them, in the course of trade. They were endorsed with
the name of T. I. Johnson. There was no other mark of
endorsement on them when turned over by T. I. Johnson
to the plaintiffs. The interpleader, also, claims that in
consideration of the surrender to T. I. Johnson of said
notes, the latter turned over to him the saloon fixtures in
question, and on that day he rented to said T. I. John-
son said property, taking from him a written lease, but
the same was not recorded until the twenty-first day of
April, 1885, at 10:20 p. m.

The case was tried before the court sitting as a jury.

There was some other evidence in the case, but not of
material importance.

The plaintiffs asked no declarations of law.

On behalf of interpleader, the court gave the following declarations:

"1. The court declares the law to be that, if it should find and believe, from the evidence in the case, that the property in controversy was large and cumbersome, and was only suitable for and in necessary use at the time of such sale, for the purpose of which interpleader had rented the building in which same was situate, then it was not essential to the validity of such sale or transfer to interpleader of same, that there should be an actual delivery of said property by said defendant to interpleader, and be followed by an actual and continued change in possession of same."

"2. The court further declares the law to be, that if it should find and believe, from the evidence in the case, that the interpleader was the purchaser in good faith, for a valuable consideration, without any knowledge, notice, or information, of any fraudulent intent on the part of defendant to hinder, delay, or defraud, his creditors of the property in controversy, and that the same was situated at the time in a building owned by interpleader, and then occupied by one Samuel Carey as tenant of interpleader, and that the property, although owned by defendant, was in the possession of said Carey, then it became and was unnecessary to the validity of such transfer to interpleader that there should have been any change of the possession between Carey and interpleader."

The court refused to give the following declarations of law:

"3. The court declares the law to be that, if it should find and believe, from the evidence in the case, that the interpleader was the owner in good faith for a valuable consideration, and in possession of notes to the amount of four hundred dollars, secured by a deed of trust, and that, for the purpose of enabling the defendant to make a payment on his indebtedness to plaintiffs, he surrendered and re-delivered the same to said defendant in considera-

tion of the transfer of the title to the property in contro-
versy, by him to interpleader, and, thereupon, said
defendant turned over to plaintiffs said notes, and the
same was accepted by them in payment of so much of
their said indebtedness against defendant, then plaintiffs
are estopped and precluded from denying the validity of
such transaction between interpleader and defendant,
and the finding and judgment should be for inter-
pleader."

"4.   If the court shall find, from the evidence in the
case, that at and prior to the purchase by him of the
property in dispute, the interpleader was the owner of
the building in which said property was then situated,
and has continued to be the owner thereof, and at the
time of the purchase of said property, said building was
occupied by one Carey, as the tenant of interpleader, and
the court shall further find, from the evidence, that said
property was adopted and used for the carrying on of
the business of such tenant of the interpleader in said
building, then the court declares the law to be that, as
against the plaintiffs, no other change of possession was
necessary to invest interpleader with the perfect title to
said property, and the finding will be for interpleader."

The court, thereupon, found the issues for plaintiffs,
and interpleader has appealed.

I.   We are satisfied, on a review of this evidence,
that the finding of the court was for the right party.   It
was well supported by the evidence.   In fact, the *indicia*
of fraud and collusion between these two brothers is so
palpable that it is difficult to see how the court could
have found otherwise.   Unless, therefore, the instruc-
tions given and refused by the court indicate that the
court tried the case on the wrong theory, we will not dis-
turb its finding.

The substance of the real issues in this case was fully
contained in the two instructions given by the court.
The third instruction was properly refused.   We fail to
discover in this record any estoppel predicable of the fact

that T. I. Johnson turned over to plaintiffs the notes,. claimed by interpleader to have been transferred by him for the purpose of enabling him to effect a settlement with plaintiffs. There was nothing on the face of the notes to indicate that interpleader ever owned them. On their face they were payable to T. I. Johnson. There is· no evidence that plaintiffs, when they took the notes, had any knowledge of the purpose for which interpleader obtained them. They took them in the usual course of business, just as any creditor would take property from his debtor in part payment of the debt, without anything· to excite suspicion, or put them on inquiry as to the circumstances under which the debtor obtained the property. And as there is no pretense that T. I. Johnson obtained the notes fraudulently, and did not, in fact, own them when he turned them over to plaintiffs, how can any estoppel arise in the case?

The creditor, to be affected with any equities between the debtor and the party from whom he obtains the property, thus transferred to the creditor, must have knowledge of the facts and circumstances under which the· same was obtained. *Hathaway v. Brown*, 22 Minn. 214; *McFarlane v. Fouke et al.*, 1 Watts & Serg. 297; *Baldwin v. Tuttle*, 23 Ia. 72.

The fourth instruction was properly denied, both for the reason that the court had already, in the declarations given, conceded to the interpleader as much as he was entitled to on the issue of the visible transfer of possession, and especially because it ignored the issue of the fraudulent collusion between the parties, the two Johnsons, and the evidence strongly tending to show that Carey's possession was in fact that of T. I. Johnson, who· had really continued in possession all the time.

We do not perceive the importance to be attached to· the claim of appellant that this pretended lease to his brother was recorded before the attachment was actually levied. It made no difference, even if the statute had authorized the recording of such instruments of writing,

for the real question at issue was, was the interpleader an innocent purchaser for value without notice?

The verdict of the court undoubtedly was against this pretension, and the verdict was amply supported by the evidence.

The judgment is affirmed.    All concur.