McFARLAN CARRIAGE COMPANY, Respondent, v. CHARLES B. WELLS et al., Appellant.

Kansas City Court of Appeals, May 11, 1903.

1. **Bankruptcy: REPLEVIN: JURISDICTION: TITLE.** Under the Bankrupt Act of 1867 the title of a bankrupt in his property passed on the filing of the petition; but under that of 1898 it passes as of the date of the adjudication; and on the facts in this cause at the time of the commencement of this suit there was nothing in the bankrupt proceeding to prevent the State court, by its writ of replevin, from acquiring jurisdiction of the property seized.

2. **Sales**: CONSTRUCTION: TITLE: PRINCIPAL AND AGENT. A contract, the provisions of which are somewhat inconsistent and the meaning doubtful and obscure, is held, on the action of the parties themselves, to have constituted the vendee the agent of the vendor to sell the property and account for the proceeds.

3. **Chattel Mortgages**: POSSESSION: CREDITORS: ATTACHMENT. Where the integrity and good faith of a transaction evidenced by a mortgage is unquestioned though fraudulent in law, it can be validated against creditors where the mortgagee takes possession of the mortgaged property before the rights of creditors intervene, and this is applied to an unacknowledged unrecorded contract of sale constituting the vendee the agent of the vendor, though during the time the goods remain in possession of such agent they are subject to attachment by his creditors.

4. **Bankruptcy**: PROPERTY SUBJECT TO LEGAL PROCESS: POSSESSION: CONSTRUCTION. Section 67 of the bankrupt act manifestly applies to cases where liens are claimed against property, but under section 70 property which prior to the filing of the petition the bankrupt could by any means have transferred or which was subject to judicial process in favor of his creditors passes to the trustee; and where the bankrupt was agent by means of an unrecorded contract authorizing him to sell and account for the proceeds, it is immaterial whether he was in possession under his contract or by wrong of the property involved in the contract, since he could have transferred the same or his creditors could have seized it.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan*, Judge.

Reversed and remanded.

*Bente & Wilson* and *C. C. Kelly* for appellant.

(1)   The receiver and trustee, took the title to said property as of the date of the filing of the involuntary bankruptcy suit against the said Wells, to-wit, on the 8th day of November, 1900. Bankruptcy Act, 1898, sec. 67a, 70, sub. 4 and 5; In re Pekin Plow Co., 112 Fed. 308; In re Burka, 104 Fed. 326.   (2)   The bankruptcy court acquires jurisdiction upon the filing of the petition. This jurisdiction covers the entire subject. It includes the person and subject-matter and all the

property of the bankrupt in his possession at that time. From that time possession of the property is *in custodia legis*. In re Appel, 103 Fed. 931; In re Schloerb, 97 Fed. 326; In re Lewis, 91 Fed. 532; In re Kindt, 98 Fed. 867; Brandenburg on Bankruptcy (2 Ed.), pp. 33, 34; Loveland on Bankruptcy, pp. 68, 187; Bankruptcy Act 1898, sec. 2, subd. 3; sec. 70a, subd. 5; White v. Schloerb, 178 U. S. 542; In re Burka, 104 Fed. 326; In re Pekin Plow Co., 112 Fed. 308. (3) The involuntary petition in bankruptcy having been filed on November 8, and confession of bankruptcy having been signed by the bankrupt and filed on the same day, all the property that the bankrupt had at that time was from the .date of the filing of the petition *in custodia legis* and being so held was not subject to the process of any other court, not having supervisory or appellate jurisdiction over the court of bankruptcy. In re Schloerb 97 Fed. 326; In re Ward, 104 Fed. 985; In re Whittener, 105 Fed. 180; White v. Schloerb, 178 U. S. 542; Hudson v. Lamar, 74 Mo. App. 238; State ex rel. v. Netherton, 26 Mo. App. 424; Marx v. Hart, 166 Mo. 503; Green v. Tittman, 124 Mo. 372; Patterson v. Stevenson, 77 Mo. 329 (332); Bank v. Owen, 79 Mo. 429; State ex rel. v. Six, 80 Mo. 61; State ex rel. v. Boothe, 68 Mo. 546; Loveland on Bankruptcy, sec. 152, p. 290; Moran v. Sturges, 154 U. S. 256. (4) The jurisdiction of the bankruptcy court is supreme—it is exclusive. In re Smith, 92 Fed. 135; In re Richard, 94 Fed. 633; In re Frances-Valentine Co., 93 Fed. 953; Keegan v. King, 96 Fed. 758; In re Cobb, 96 Fed. 821; In re Endl, 99 Fed. 915; In re Chambers, 98 Fed. 865; In re Wells, 114 Fed. 222; In re Tune, 115 Fed. 906; Bryan v. Bernheimer, 181 U. S. 188; In re Pekin Plow Co., 112 Fed. 308; In re Schloerb, 97 Fed. 326; In re Ward, 104 Fed. 985; In re Whittener, 105 Fed. 180; Metzner v. Graham, 57 Mo. 404; Carter v. Hobbs, 92 Fed. 594; Thornton v. Hogan, 63 Mo. 143; Bankruptcy Act 1867, secs. 4991, 5046; 22 Sup. Ct. Rep. 275; Bank v. Sherman, 101 U.

S. 403. (5). Bankrupt courts are courts of limited jurisdiction. They are not inferior courts whose jurisdiction must be shown. They are courts of record and their jurisdiction is presumed in their judgments, orders and proceedings. Reed v. Vaughn, 10 Mo. 447; In re Columbia Real Estate Co:, 101 Fed. 965; Bankruptcy Act 1898, sec. 70, subd. 5; Mueller v. Nugent, 22 Sup. Ct. Rep. 275; In re Pekin Plow Co., 112 Fed. 308. (6) Where goods are delivered to the vendee, all conditions as to the property remaining in the vendor and the satisfaction of the vendee with the property, must be in writing, acknowledged and recorded, or the goods will be considered as the property of the vendee, and subject to the claims of his creditors. Imp. Co. v. Price, 81 Mo. App. 243; Collins v. Willhoit, 108 Mo. 451; Oester v. Sitlington, 115 Mo. 247. (7) The contract under which the bankrupt, C. B. Wells, held this property is clearly a conditional sale contract and it stands admitted by the respondent that said contract was not acknowledged and recorded as made and provided in such cases. R..S. 1899, secs. 3410, 3412; Dry Goods Co. v. Bank. 72 Mo. App. 226; Peters v. Fetherston, 61 Mo. App. 466; Dry Goods Co. v. Buchanan, 79 Mo. App. 528; Imp. Co. v. Price, 81 Mo. App. 243; Loeffler v. Damoree Bros., 75 Mo. App. 207; Oester v. Sitlington, 115 Mo. 247. (8) The contract entered into between the McFarlan Carriage Company and Wells, although good between the parties, was void as to prior and subsequent creditors, and all other parties purchasing said goods without notice. It should have been acknowledged and recorded as in cases of mortgages on personal property. R. S. 1899, secs. 3410, 3412; Oester v. Sitlington, 115 Mo. 247; Peters v. Fetherston, 61 Mo. App. 466; Imp. Co. v. Price, 81 Mo. App. 243. (9) By bringing of the involuntary bankruptcy proceedings the rights of creditors to have the property mentioned in respondent's petition became absolute. They were diligent creditors and their rights attached.

The respondent can not now maintain its replevin suit to gain possession of said property, since they neglected to comply with the statutes of Missouri as made and provided in such cases. In re Pekin Plow Co., 112 Fed. 308; In re Burka, 104 Fed. 326; In re Legg, 96 Fed. 326; Imp. Co. v. Price, 81 Mo. App. 243; Peters v. Fetherston, 61 Mo. App. 466; McDonald D. G. Co. v. Bank, 72 Mo. App. 226; Brittan D. G. Co. v. Buchanan, 79 Mo. App. 528; Oester v. Sitlington, 115 Mo. 247; Mueller v. Nugent, 22 Sup. Ct. Rep. 275.

*Sangree & Lamm* for respondent.

(1) We submit, there is no merit in appellant's chief contention that the State court was without jurisdiction. In re Wells, 114 Fed. 222, and cases cited; Trust Co. v. Comingor, 184 U. S. 18; Wagner v. U. S., 104 Fed. 133; Mishawaka Woolen Goods Co. v. Powell, not yet reported; In re Russell, 101 Fed. 248. (2) The contract under review, while somewhat ambiguous, is susceptible of being construed as creating Wells the factor or agent of McFarlan Carriage Company. In this view of the case, it needs no citation of authority to sustain our right to the vehicles as against the whole world. (3) But, if it be construed as not a contract creating in effect an agency, it is at least a contract of conditional sale or mortgage and, though unacknowledged and unrecorded, it was good between plaintiff and Wells; and, therefore, plaintiff, having in good faith taken the vehicles into its possession on November 5, 1900, with Wells' consent, before any of his creditors had acted, defeated all rights of creditors thereto. Drug Co. v. Self, 77 Mo. App. 284; Dobyns v. Meyer et al., 95 Mo. 132; Mallman v. Harris Brothers, 65 Mo. App. 127; Halderman v. Stillington, 63 Mo. App. 212; Barton v. Sitlington, 128 Mo. 164; Keathing v. Hannenkamp, 100 Mo. 161; Thompson v. Foerstel, 10 Mo. App. 290; State ex rel. v. Rover, 55 Mo. App. 448; Furniture

Co. v. Fricke, 39 Mo. App. 146; Scully v. Albers, 89 Mo. App. 118; Live Stock Co. v. Hunter, 91 Mo. App. 418; Landis v. McDonald, 88 Mo. App. 335; Gentry v. Templeton, 47 Mo. App. 55. (4) But the decision below was right because, if the redelivery of the vehicles to us on the 5th of November, 1900, be considered (as it well may be) a preference within four months, and thus obnoxious to the bankrupt act, yet this availeth nothing to the trustee, because such payment by preference can not be recovered back if made in good faith, without knowledge by creditor of insolvency. Bankrupt Act 1898, sec. 60, subdiv. b; Bankrupt Act, sec. 57, subdiv. g; Pine v. Trust Co., 182 U. S. 438; Peet v. Spencer, 90 Mo. 384; Huse v. Ames, 104 Mo. 91; Green v. Conrad, 114 Mo. 651; Homer v. Bank, 104 Mo. 225; Mfg. Co. v. Huff, 62 Mo. App. 124; Gregory v. Tavener, 38 Mo. App. 627; Stewart v. Platt, 101 U. S. 735; In re Economical Printing Co., 110 Fed. 514; Bank v. Iron Co., 102 Fed. 755; In re Kellogg, 112 Fed. 52; In re Shirley, 112 Fed. 301; In re Hinsdale, 111 Fed. 502; In re Sewell, 111 Fed. 791; In re Standard Laundry Co., 112 Fed. 126; In re Wright, 96 Fed. 187; In re Neely, 113 Fed. 210.

SMITH, P. J.—This is an action of replevin which was begun to recover the possession of certain wheeled vehicles.

The case may be shortly stated in this way, viz.: On November 5, 1900, the defendant Wells was engaged in carrying on business under the name of the "Sedalia Implement Company," and then had in his possession certain vehicles claimed by the plaintiff—a corporation; that on that day he recognized the title of plaintiff and voluntarily turned over the possession of such vehicles to one Holcomb, agent of plaintiff, who listed and moved them to another floor of the warehouse. On the morning of November 6th, he placed them in the possession and custody of one Richardson, and on the

next morning he commenced to move them to Planck's storehouse. He had removed part of them there when defendant Franklin, a hired man of defendant Wells, acting under the latter's orders stopped the further removal. Wells thereupon took possession of such vehicles as had not been removed to Planck's. Two days later, and on November 9th, this suit was brought, and the vehicles in the possession of Wells were taken under the writ and delivered to plaintiff.

It further appears that on November 8, 1900, certain creditors of Wells filed a petition in bankruptcy in the United States District Court; that on the same day Wells signed a confession of bankruptcy and an application was made to a referee in bankruptcy for a receiver, which appointment was accordingly made. On the 15th, the receiver so appointed took charge of the bankrupt's estate. On the 26th, Wells was duly adjudged a bankrupt, and on December 10th, following, defendant was elected trustee of the bankrupt's estate.

There was a trial which resulted in judgment for plaintiff and defendant brings the cause here by appeal.

One of the questions which counsel have discussed here at the bar and in their printed briefs, is, whether or not the State court issuing the writ under which the caption of the property took place thereby acquired jurisdiction. Under the Bankruptcy Act of 1867 the title of the bankrupt in his property passed upon the mere filing of the petition; but under that of 1898, it passes as of the date of the adjudication. Mueller v. Nugent, 184 U. S. 1; In re Wells, 114 Fed. 222. As has already been stated, the adjudication did not take place until November 26, 1900, while this suit was commenced on the 9th—seventeen days previously—so that at the date of the bringing of the suit the title of Wells was still in him and had not passed to either the receiver or trustee of his estate. At the time of the commencement of this suit there was nothing in the bankrupt proceed-

ings to prevent the State court by its writ from acquiring a rightful jurisdiction of the property seized by its officer under the writ. The bankrupt court had not then acquired jurisdiction of it by that proceeding.

It will be seen by reference to 114 Federal Reporter 222, that the defendant trustee herein filed in the proper United States District Court a bill in equity praying that the carriage company, plaintiff herein, be enjoined from the further prosecution of this replevin suit in the State court, and that it be required to deliver the possession of the property taken under the writ of replevin over to the trustee; and if the property could not be delivered, that the carriage company be required to account to the trustee for the value thereof. On the hearing the court refused to grant the relief sought, and in the course of a very able and exhaustive opinion, it was held that the bankruptcy court did not acquire jurisdiction over the property which had been taken on the writ of replevin and which was never in its possession, and that it was not authorized to enjoin the further prosecution of the replevin suit in the State court, nor to compel the plaintiff therein to submit its claims to its own jurisdiction. And in the same connection it was further said that all agree that the court, State or Federal, which first takes possession of the property retains the possession and the jurisdiction. And to the same effect is Trust Co. v. Comingor, 184 U. S. 18. The decision just referred to, reported in 114 Federal Reporter, does not appear to have been questioned by appeal or otherwise, so that no reason is seen why it may not be regarded as having authoritatively determined the jurisdiction of the subject-matter of the present suit to be rightfully in the State court in which it was brought, and not in that of the court of bankruptcy.

The second question presented by the record for decision relates to the merits of the controversy. At the conclusion of plaintiff's case the defendants interposed a demurrer thereto, which was by the court de-

nied.   In addition to the facts hereinbefore referred
to, the plaintiff adduced other evidence, from which it
appears that the plaintiff, under the provisions of an
unacknowledged and unrecorded written contract, con-
signed and transferred to Wells a large number of ve-
hicles, amongst which were those taken under the writ.
The contract just adverted to, is somewhat unique, but
the legal effect of it was, as we understand it, that the
plaintiff thereby agreed to furnish Wells the vehicles
at specified prices subject to the condition that the title
to the vehicles so furnished was to remain in it until
they were paid for, except where disposed of to bona
fide purchasers in the usual course of trade.   And while
some of its provisions seem rather inconsistent, and in
consequence of which its meaning is rendered somewhat
doubtful and obscure, yet it appears that the parties
themselves interpreted its meaning to be as just stated.
It further appears that the plaintiff held the note of
Wells for the vehicles furnished and when he made de-
fault in its payment the former sent an agent to the lat-
ter who recognized that the property in such of the ve-
hicles as were still in his possession and undisposed of
was in such former.   Accordingly, Wells turned over
the actual physical possession of such vehicles to plain-
tiff's agent, who thereafter had the exclusive possession
thereof until forcibly taken from him by the agent of
Wells.   It is thus made clear that the parties inter-
preted the contract to mean that the title to the vehicles
remained in plaintiff and was so in it at the time Wells
delivered them to its agent.   As between the plaintiff
and Wells the contract, even if an unacknowledged and
unrecorded bill of sale or mortgage was *inter se* valid.
Johnson v. Jeffries, 30 Mo. 423; Bank v. Bank, 50 Mo.
App. 92.

The instrument provided not only that the title to
the vehicles should remain in the plaintiff, but as well
that that to the proceeds of the vehicles disposed of in
the usual course of trade.   The transaction would there-

fore seem to have been that between principal and agent where the agent was entrusted with the property of the principal and the proceeds arising from the sale thereof and for which he was to account with the principal. It was not therefore void upon its face nor to be likened to a case where a mortgage of a stock of merchandise is taken which is void on its face as a matter of law and where it appears therefrom that the mortgagee is to remain in possession and sell the goods in the usual course of business and therefore it is for his own use and benefit and within the inhibition of the statute. R. S., secs. 3410, 3412. Barton v. Sitlington, 128 Mo. 164.

Where the integrity and good faith of a transaction evidenced by a mortgage is not, as here, questioned, such a mortgage, though fraudulent in law, can be validated against creditors if possession be taken of the mortgaged property by the mortgagee with the consent of the mortgagor before the rights of creditors intervene. By the taking of the actual possession by the mortgagee it is purged of the fraud. Barton v. Sitlington, supra; Dobyns v. Meyer, 95 Mo. 132; Joseph v. Boldridge, 43 Mo. App. 333; Wood v. Hall, 23 Mo. App. 100. No creditor of Wells had intervened or caused the vehicles to be seized on legal grounds before the possession of them was delivered by him to the plaintiff. After the delivery of the property to plaintiff they could not be attached or seized under execution at the instance of another creditor of Wells. Barton v. Sitlington, supra. But between the time of the acquisition of it under the conditional sale or mortgage and that when Wells delivered back the possession to plaintiff, it was subject to attachment or execution by his creditors.

According to the contention of the plaintiff, the possession of the property was delivered to him three days before that on which the petition in bankruptcy was filed, and therefore on the latter day the title to it

was not in Wells, but in it. It must be conceded that where a statute provides as in this State that conditional sales of personal property unless in writing, acknowledged and recorded, shall be deemed absolute sales, except as between the parties or where property held by a bankrupt purchased under a bill of sale neither acknowledged nor recorded will vest in his trustee for the benefit of the estate and can not be reclaimed from him by the vendor. In re Pekin Plow Co., 112 Fed. 308; In re Legg, 96 Fed. 326. The two cases just cited hold that section 67, subd. "a," of the bankruptcy act means that any lien, which would not have been valid, if other creditors had a right before bankruptcy to avoid the same either for want of record or otherwise, shall not constitute a lien against the bankrupt's estate. In the former of them a creditor had entered into a contract with the bankrupt at the time he had sold him certain goods to the effect that "all goods on hand and the proceeds thereof" were to be held by the bankrupt as collateral security and in trust for the vendor until all cash obligations to him were paid by the vendee. Part of the goods were found amongst the assets of the bankrupt and were taken into the possession of the trustee. The vendor filed a claim for a perpetual lien upon these goods which was denied. The latter case was where a certain machine was sold by the vendor to the vendee under an acknowledged and unrecorded agreement. Afterwards, when the vendee was declared a bankrupt there remained a part of the purchase price unpaid. The vendor applied to the bankrupt court for an order to have the machine in the possession of the trustee delivered to him. This was refused.

Section 67, subd. "a," of the bankruptcy act also declares that claims that for want of record or for any other reason would not have been valid liens against the claims of creditors of the bankrupt shall not be liens against his estate. This statute most manifestly was designed to apply to cases where liens are claimed

against property as in the Plow Company case in ·112 Federal Reporter, supra. But section 70 of said bankruptcy act further provides that property which prior to the filing of the petition he could by *any means have transferred,* or *which might have been levied upon and sold under judicial process against him, shall pass to the trustee.* That Wells could have transferred the vehicles and that same could have been levied upon and sold under judicial process against him can not in view of what we have already stated, be well denied; and if he could, then the title to property under the subdivision of the bankruptcy act just referred to passed to the trustee, who had the right to the possession thereof as against the transferee, the plaintiff.

It follows that it was immaterial whether Wells was in possession under the contract or whether he had turned it over to plaintiff's agent and then retaken it, and in that way was in possession at the time of the caption, since in either case the title by operation of law had passed to the trustee of the bankrupt's estate when the adjudication was made. As has been stated, the conditional sale or mortgage though valid between the plaintiff and Wells was absolute as to the creditors of the latter, and as the property could have been transferred by such latter, or levied upon and sold under judicial process against him, it results that under the bankruptcy act the transaction between plaintiff and Wells, whereby it is claimed that Wells redelivered the possession to plaintiff, was ineffective to vest the title in him. It still remained in Wells, as if there had been no such redelivery. He was, under the circumstances, incapable in law of making or assenting to the redelivery of the possession back to the plaintiff so as to revest the title in plaintiff or of thereby divesting himself of it as against creditors, or, which is the same thing, his trustee in bankruptcy.

The title remained in Wells as to creditors from the time he acquired title under the sale to him until he

became *civiliter mortuus* by reason of the adjudication in bankruptcy, when by operation of the bankrupt law it passed to the trustee. The latter was a proper party to the suit, and as the representative of the creditors of the bankrupt he had the right to appear and defend. If the title was in Wells, as we think was the fact, when the suit was brought, and later on it passed to the trustee, certainly the trustee representing the creditors was the proper party to contest the claim set up by the plaintiff.

And since we must hold the title to the property was in Wells at the time of the institution of the suit, it inevitably follows that upon plaintiff's own showing it was not entitled to recover, and the trial court therefore erred in denying the demurrer. Accordingly, the judgment will be reversed and cause remanded. All concur.