STUDEBAKER BROS. MANUFACTURING CO., Appellant, v. ELSEY-HEMPHILL CARRIAGE COMPANY, J. A. POTTER, Intervenor, Respondent.

Springfield Court of Appeals, November 10, 1910. Motion for Rehearing Overruled January 9, 1911.

1. REPLEVIN: Bankruptcy: Personal Property: Fraudulent Conveyances: Rights of Trustee. A manufacturer sold to a dealer a certain lot of buggies and wagons. Later while the vehicles were in the possession of the dealer they were sold back to the manufacturer but possession was not changed, and the creditors of the dealer had no notice of the sale. Subsequently another agreement was entered into whereby the dealer was to sell the property on commission, under conditions which brought the contract within the provisions of section 2889, Revised Statutes 1909, and this contract was not recorded. Afterwards the manufacturer brought a replevin suit for the property, and in a couple of weeks, but before this suit was

tried, the dealer was adjudged a bankrupt, and the trustee in bankruptcy intervened for the property. *Held*, that the manufacturer was not entitled to recover for the conveyance was fraudulent as to creditors and the trustee was vested with the property.

2. **BANKRUPTCY: Fraudulent Conveyances: Rights of Trustee.** Sections 67 and 70 of the Bankruptcy Law expressly provides that the title to property transferred by the bankrupt in fraud of his creditors, is vested by operation of law, in a trustee. The general rule is that the trustee stands in the shoes of a bankrupt, but in all cases affected by the fraud of the bankrupt toward creditors, or where there has been some transfer or encumbrance of the property void as to creditors by state law, for want of record or for failure to take possession, or otherwise, the trustee succeeds to the right of any creditor who may be qualified under the state law to avoid the transfer.

3. **FRAUDULENT CONVEYANCES: Personal Property: Possession to Follow Sale.** Section 2887, Revised Statutes 1909, provides that every sale made by a vendor of goods in his possession, or under his control, unless accompanied by delivery within a reasonable time, regard being had to situation of the property, and be followed by an actual and continued change of possession, shall be held to be fraudulent and void as against the creditors of the vendor or subsequent purchasers in good faith.

4.. ————: **Conditional Sales: Recording Instrument.** A dealer purchased from the manufacturer a lot of buggies and wagons. Subsequently these vehicles were sold back to the manufacturer but possession was not changed, and later, by agreement, the dealer sold these vehicles on commission. The terms of this last agreement are examined and *held* that the contract is subject to the provisions of section 2889, Revised Statutes 1909, and that it was void as to creditors because not acknowledged and recorded.

5. **BANKRUPTCY: Preferring Creditors.** By section 3 of the Bankruptcy Act it is provided that the debtor has committed an act of bankruptcy when he has transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditor.

6. ————: **Fraudulent Conveyances: Act of Giving Preference.** A dealer, purchased on credit, wagons and buggies from a manufacturer, possession of which was delivered to the dealer, and he subsequently sold the property back to the manufacturer, but retained possession. Later the manufacturer and dealer entered into an agreement which was held to come under the provisions of section 2889, Revised Statutes 1909,

Manufacturing Co. v. Carriage Co.

whereby the dealer was to sell the property on commission, but this agreement was held void as to creditors because not acknowledged and recorded. Sometime after, four months from the last agreement, the manufacturer brought a replevin suit and seized the property. Before the replevin suit was tried the dealer was declared a bankrupt. *Held*, that the act of giving preference to a creditor was committed when the manufacturer undertook to complete the transfer of the property by taking possession under the replevin suit.

7. ———: ———: ———. A preference and a fraudulent transfer is not the same. In a preferential transfer the fraud is technical and consists in the infraction of the rule of equal distribution among all the creditors when all cannot be fully paid; while in a fraudulent transfer the fraud is actual in that the bankrupt has secured an advantage for himself over the creditors.

Appeal from Lawrence Circuit Court.—*Hon. H. F. Johnston,* Judge.

Affirmed.

*J. B. McGuffin* and *McPherson & Hilpirt* for appellant.

(1) The court erred in refusing plaintiff's instruction A. Upon the undisputed and admitted facts plaintiff was entitled to a peremptory direction to find for it. Thompson v. Massey, 76 Mo. App. 197; Tufts v. Thompson, 22 Mo. App. 64; Drew v. Drum, 44 Mo. App. 25; Bank v. Iron Co., 102 Fed. 755; Peet v. Spencer, 90 Mo. 384; Green v. Conrad, 114 Mo. 651; Collins v. Wilhoit, 108 Mo. 456; In re New York Printing Co., 110 Fed. 514; Thomas Mfg. Co. v. Huff, 62 Mo. App. 124.

*Edw. J. White* and *James A. Potter* for respondents.

(1) The attempted transfer of the buggies by defendant to plaintiff on August 20, 1908, is void for the reason that it violates section 70, clause 4, of the

Bankruptcy Act, and appellant admits that respondent may avoid and transfer in violation of the Bankruptcy Act. Bank Act 1898, sec. 70, clause 4; In re Legg et al., 96 Fed. 326; In re Rodgers, 125 Fed. 169; In re Kohler, 159 Fed. 871; In re Taylor, 95 Fed. 956; In re Butterwick, 131 Fed. 371; Skilton v. Coddlington, 185 N. Y. 80; Blake v. Meadows, 123 S. W. 868. (2) Plaintiff's action of replevin is in direct conflict with the provisions of paragraph "F" of section 67, of Bankruptcy Act of 1898. Matter of S. Ah Mi., D. C. Hawaii, 18 Am. B. R. 138; McElvain v. Hardesty, 169 Fed. 31; Bank v. Connett, 142 Fed. 33; In re Hymes, 130 Fed. 977; In re Haynes, 123 Fed. 1001; Matter of Weineger & Co., 126 Fed. 875; Matter of Rudnick & Co., 158 Fed. 223; Bankruptcy Act, sec. 67. (3) Under the evidence and the provision of the Bankruptcy Act the trustee clearly acquired title to this property. The law has been so declared in a number of cases. McFarlan Co. v. Wells, 99 Mo. App. 641; In re Pekin Co., 112 Fed. 308; In re Legg, 96 Fed. 326; In re Burks, 104 Fed. 326; Clark v. Williams, 190 Mass. 219; Logan v. Plow Co., 93 N. W. 1128; Haskell v. Merrill, 179 Mass. 120. (4) Plaintiff's action cannot be sustained for the reason that it would be violative of paragraph "E" of section 70 of the Bankruptcy Act. Sheldon v. Parker, 11 B. R. 152; In re Mullen, 101 Fed. 413; Bush v. Storage Co., 136 Fed. 918; Thomas v. Roddy, 122 N. Y. App. Div. 851; In re Rogers, 125 Fed. 169.

GRAY, J.—This suit originated in the circuit court of Lawrence county, by the appellant filing with the clerk of said court on August 30, 1909, a petition and affidavit in replevin in due form, wherein it was claimed that appellant was the owner and entitled to the possession of ten top buggies and six surreys, of the value of twelve hundred dollars. The suit was brought to the January term, 1910, of said court. On

the 15th day of September, 1909, the Elsey-Hemphill Carriage Company, a corporation, was adjudged a bankrupt, and the respondent, J. A. Potter, was appointed trustee of the bankrupt's estate. The corporation filed no answer but the trustee was allowed by the circuit court to intervene and defend the suit.

The Elsey-Hemphill Carriage Company was organized under the laws of this state in 1905, with a capital stock of ten thousand dollars, consisting of real estate, merchandise and cash. In October, 1905, the corporation purchased from the appellant buggies and wagons. The buggies were purchased outright, but the wagons under a special option contract. Between October, 1905, and August 20, 1908, the corporation had purchased of the appellant the property involved in this suit. On the latter date the corporation was indebted to the appellant in the sum of twenty-four hundred dollars, about nineteen hundred dollars of which was represented by notes, a part of which were due. At that time the buggies were in the possession of the corporation, and were a part of the stock of merchandise carried by the corporation in its store at Aurora, Mo. On that day an agreement was entered into between the appellant and the corporation, by the terms of which the corporation sold to the appellant all of the property involved in this suit. The agreement was evidenced by a written bill of sale executed by the corporation and delivered to the appellant, but not recorded. After the execution of this bill of sale, the corporation continued in the possession of the property, handling it in the ordinary course of business, and nothing was done to notify any one that the corporation had sold the same to the appellant. In May, 1909, another contract was entered into between the appellant and the corporation, by the terms of which the corporation was to sell and dispose of the property on commission.

The testimony fully discloses that the creditors of the corporation or the public, had no notice or knowledge that the appellant had purchased the property in 1908, or that the same was being handled by the corporation on any contract recognizing ownership in the appellant. The testimony further shows that the corporation in August, 1908, was unable to meet its demands then due, and that the appellant had notice thereof, and an officer of the corporation notified the appellant that if it pressed payment of the amount due, the corporation would be forced into bankruptcy. During the trial an admission was made that the corporation was insolvent, and that its liabilities were nine thousand dollars and its assets three thousand dollars, including the property in controversy. On trial before a jury, the respondent was successful and the value of the property was assessed at twelve hundred dollars and the appellant appealed.

It is the contention of the appellant that under the Bankruptcy Law the trustee takes only the title of the bankrupt, and stands absolutely in his shoes and can avoid no sale or transfer that the bankrupt could not avoid if defending or prosecuting in his own name and without having been adjudged a bankrupt. It seems to us that the plain reading of the bankruptcy statute proves the unsoundness of this contention. Section 70 of that law reads: "The trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all documents relating to his property; interests in patents, patent rights, copyrights, and trade-marks; property transferred by him in fraud of his creditors; property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. The trustee may avoid any transfer by the bankrupt of his property

which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication."

Section 67 of the act reads: "Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate. And whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created, by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the trustee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

It will be seen that the statute expressly provides that the title to property transferred by the bankrupt in fraud of his creditors, is vested by operation of law in the trustee. The general rule is that the trustee stands in the shoes of the bankrupt, but in all cases affected by the fraud of the bankrupt toward creditors, or where there has been some transfer or encumbrance of the property void as to creditors by state law, for want of record, or for failure to take possession, or otherwise, the trustee succeeds to the rights of any creditor who may be qualified under the state law to avoid the transfer. [Remington on Bankruptcy, sec. 1207; Chesapeake Shoe Co. v. Seldner, 122

Fed. 593; Bush v. Export Storage Co., 136 Fed. 918; Mitchell v. Mitchell, 17 A. B. R. 389; Smith v. Mishawaka Woolen Mfg. Co., 172 Fed. 98; Security Warehousing Co. v. Hand, 206 U. S. 415, 51 L. Ed. 1117; In re New York Economical Printing Co., 110 Fed. 514; Fourth National Bank v. Millbourne Mills Co., 172 Fed. 177; McElvain v. Hardesty, 169 Fed. 31; In re Burlage Bros., 169 Fed. 1006; In re Rudnick, 102 Fed. 750; In re Rogers, 125 Fed. 169.]

Counsel have carefully discussed in their brief the different statutes of this state relating to transfers of property by a debtor, but it will only be necessary to notice sections 2887 and 2889 of the Revised Statutes of 1909. Section 2887 provides that every sale made by a vendor of goods in his possession or under his control, unless accompanied by delivery in a reasonable time, regard being had to the situation of the property, and be followed by an actual and continued change of the possession, shall be held to be fraudulent and void, as against the creditors of the vendor, or subsequent purchasers in good faith.

Under the admitted facts in this case, the corporation was the absolute owner of the property in question on August 20, 1908. On that date, and by a written bill of sale, the property was transferred to the appellant, but the seller remained in full possession thereof, and therefore, the sale was void as to creditors.

Section 2889 provides that in all cases where any personal property shall be sold to be paid for in whole or in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to such other, whenever the amount paid shall be a certain sum, the title in the meantime to remain in the vendor, lessor, renter, hirer or deliverer, such condition, in regard to the title so remaining shall be void as to all subsequent purchasers in good faith and creditors, unless such condition shall be evidenced by

writing, executed, acknowledged and recorded, as provided in cases of mortgages of personal property.

On May 4, 1909, the appellant obtained from the corporation a contract in writing, by the terms of which the vehicles then in the possession of said corporation, and now in controversy in this suit, were to be sold by the corporation on commission. The said corporation was granted the right to sell the goods in actual sales, and until sold, the title remained in the appellant. The corporation was required to furnish at its own expense, books showing the transactions under the contract, and the sales from the property were to be kept as a trust fund. The corporation was required to pay the freight and all taxes levied by the state, county and city governments on the property while in its possession; and it was further required to insure the property at its own expense, and in case of loss, the corporation was to pay the appellant the difference in cash between the insurance received and the invoice price of the property, less freights. If the contract was terminated by the failure of respondent to faithfully keep its provisions, or if the goods assigned remained unsold for twelve months from the date of the invoice, respondent was required to pay in cash the invoice price, or return the same to the appellant at South Bend, Indiana, at the option of the appellant, and also pay the further sum of ten per cent of the invoice price to cover the natural depreciation while in respondent's possession.

It is claimed by the appellant that the contract is not covered by said section 2889, and cites in support of its contention Pete v. Spencer, 90 Mo. 384, 2 S. W. 434. In that case the plaintiffs delivered to the defendant's assignors a carload of soap at Joplin, Mo. to be sold on commission. The consignor fixed the price and the consignee received fifteen or twenty cents a box according to the size of the box, for soap sold. There were no other conditions in the contract. The

court held .that the contract was not covered by the statute, and in so holding, followed the case of Plow Co. v. Porter, 82 Mo. 23. When the Porter case was decided, Judge PHILIPS was a member of the court. Subsequently Judge PHILIPS became a member of the Federal Court and wrote the opinion In re Babenau, 118 Fed. 471, wherein it is held that a contract containing the provisions of the one in the present case, is within the statute. In the case in the Federal Court, Judge PHILIPS reviews both of the above cases from our Supreme Court, and holds that they do not govern in cases where the contract contains provisions of the one now being considered.

We are of the opinion that the law is correctly declared in the Babenau case, and therefore hold that the contract of May 4, 1909, is subject to the provisions of section 2889.

Under section 2887, the sale is void as to creditors, unless possession be taken within a reasonable time, and under section 2889, the contract is void as to creditors unless acknowledged and recorded. By section 3 of the Bankruptcy Act, it is provided that the debtor has committed an act of bankruptcy when he has transferred, while insolvent, any portion of his property to one or more of his creditors, with intent to prefer such creditor. And it is further provided that a petition may be filed against a person who is insolvent and who has committed any act of bankruptcy within four months after the commission of the act, and that said period shall not expire until four months after the date of the recording or registering of the transfer or assignment, when the act consists in having made a transfer of any of his property, for the purpose of giving a preference, and if recording or registering is not required by the laws of the state, then from the date when the beneficiary takes notorious, exclusive or continuous possession of the property.

The sale of August 20, 1908, did not take effect as against creditors until the replevin suit was brought, for the reason possession was not taken. And the conditional contract of May 4, 1909, did not take effect because the contract was not recorded. [First Nat'l Bank v. Connett, 5 L. R. A., N. S. 148, 142 Fed. 33; McFarlan Carriage Co. v. Wells, 99 Mo. App. 641, 74 S. W. 878.]

What we have just said is to be construed in relation to preferences, and not fraudulent transfers. A preference and a fraudulent transfer are not the same. In a preferential transfer, the fraud is technical, and consists in the infraction of the rule of equal distribution among all the creditors when all cannot be fully paid; while in a fraudulent transfer, the fraud is actual, in that the bankrupt has secured an advantage for himself, over the creditors. [Van Iderstine v. National Discount Co., 174 Fed. 518.]

While one of the contracts in question was made on August 20, 1908, and the other on May 4, 1909, yet in determining the question of preference, we must take the situation as it existed when the appellant undertook to complete the transfer by taking possession of the property at the institution of this suit. At that time the corporation defendant was hopelessly insolvent, and the dealings of appellant with it from August 20, 1908, shows appellant must have been apprised of that fact. These things being true, to permit the appellant to hold the property under the evidence in this case, would be a violation of the provisions of the Bankruptcy Act, both in letter and spirit. [In re W. W. Mills Co., 162 Fed. 42; In re Hersey, 171 Fed. 1004; Hess v. Theodore Ham Brewing Co., 121 N. W. 232; Pire v. Chicago Title & Trust Co., 182 U. S. 438, 45 L. Ed. 1171; McFarlan Carriage Co. v. Wells, 99 Mo. App. 641, 74 S. W. 878; Remington on Bankruptcy, sec. 1207; First National Bank v. Staak, 202 U. S. 141;

In re Rogers, 125 Fed. 169; In re Hackathorn, 144 Fed. 499.]

Some questions have been raised about the instructions given and refused, but from what we have said herein, the judgment of the trial court is for the right party, and under the evidence, the plaintiff is not entitled to recover, and therefore, the action of the court relating to the instructions, even if erroneous, would be no grounds for reversing the judgment. [Krepp v. Railroad, 99 Mo. App. 94, 72 S. W. 479.]

The judgment of the trial court will be affirmed. All concur.