FONTAINE McCULLAM, TRUSTEE IN BANK-RUPTCY OF MASTERS LUMBER COMPANY, Respondent, v. BUCKINGHAM HOTEL COMPANY, Appellant.

St. Louis Court of Appeals, Opinion Filed December 4, 1917.

1. CORPORATIONS: Officers: Misapplication of Corporate Funds. One accepting corporate checks, drawn by an officer thereof, in payment of his private obligations, takes the risk of being required to restore the proceeds thereof, in the event that corporate funds were thereby misapplied.

2. ――――: Misapplication of Corporate Funds: Evidence: Burden of Proof. A defendant admitting that he received corporate checks drawn by an officer in payment of private obligations has the

burden of showing such officer's authority to draw upon corporate funds for private purposes.

3. ———: ———: Statute: Retroactive Operation. Laws 1917, p. 143, rendering not liable persons receiving in good faith corporate checks for private obligations of officers, is inapplicable where judgment was entered against defendant payee in 1916.

4. ———: Officers: Increase in Compensation. A president of a corporation cannot arbitrarily increase his salary and credit himself with such increase for the preceding year without consent of the directors or stockholders.

5. BANKRUPTCY: Suits by Trustee in Bankruptcy: Estoppel. A bankruptcy trustee is not estopped from recovering corporate funds diverted to paying private debts of officers by the alleged consent of the directors and stockholders, since the trustee also represents corporate creditors.

6. CORPORATIONS: Officers: Misapplication of Corporate Funds. The amount of monthly corporate checks drawn by an officer for his private debts may be recovered, where such officer had previously overdrawn his salary account, although such checks were for smaller amounts than the officer's monthly salary.

7. BANKRUPTCY: Misapplication of Corporate Funds: Suit by Trustee in Bankruptcy. A bankruptcy trustee may recover corporate funds diverted by an officer for paying his private debts while the corporation was insolvent, although many creditor's claims represented by the trustee accrued subsequent to such diversion.

8. CORPORATIONS: Officers: Misapplication of Corporate Funds. Corporate checks drawn by an officer for his private obligations carry upon their face notice of their irregular and illegal character.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Leo S. Rassieur*, Judge.

AFFIRMED.

*Marshall & Henderson* for appellant.

(1) Instruction No. 1 covers the facts in judgment, under the agreed statement of facts, and the trial court erred in refusing the same for the following reasons: (a) This is an action for money had and received, and is, therefore, equitable in its nature, and it would be inequitable to hold the defendant liable in this case. Reynolds v. Gerderman, 185 Mo. App. 183. (b) The de-

fendant has successfully borne the burden of showing that S. M. Masters and Marcus Masters had authority from the corporation to pay their individual debts to the defendant for board and lodging at the defendant's hotel. St. Charles Savings Bank v. Edwards, 234 Mo. 555; Coleman v. Stocke, 159 Mo. App. 43; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262; St. Charles Savings Bank v. Orthwein Inv. Co., 160 Mo. App. 369. (c) S. M. Masters and Marcus Masters were entitled to salaries from the corporation, notwithstanding no resolution was ever adopted by the stockholders or directors fixing their salaries, and there was no entry of such a resolution upon the minutes of the meetings of the stockholders or directors fixing such salaries, because S. M. Masters, Marcus Masters and Louis C. Johnson were the sole stockholders and directors of the corporation and they fixed the salary each should receive, and that agreement is just as effectual and binding as if it had been entered upon such minutes. Taussig v. Railroad Co., 166 Mo. 33; Rose v. Carbonating Co., 60 Mo. App. 28; Bennett v. St. Louis Car Roofing Co., 19 Mo. App. 349; Remmers v. Seky, 70 Mo. App. 364; Ward v. Davidson, 89 Mo. 454. The only case which holds that there must be a resolution of the stockholders or board of directors regularly adopted and entered upon the minutes fixing the salaries of the officers, is the case of Besch v. Western Carriage Co., 36 Mo. App. 333. (d) A corporation is a citizen within the meaning of the Fourteenth Amendment to the Constitution of the United States, and stands in the same relation to a subject-matter with a citizen, where the conditions are the same. Turnpike Co. v. Sanford, 164 U. S. 592; Julian v. Star, 209 Mo. 102; Houston v. Pulitzer Pub. Co., 249 Mo. 338. (e) A citizen employer would be estopped to recover from a third person money paid to a third person by an agent in discharge of the agent's debts to such third person under the conditions here presented. So, a corporation is estopped under the same conditions. Hence, it was error to refuse defendant's instruction No. 5. (f) Only creditors whose claims

were existing at the date of a wrongful appropriation of the corporation's funds can be heard to recover the same. Subsequent creditors cannot do so, for they did not give credit to the corporation upon the faith of the corporation having such assets. Reynolds v. Faust, 179 Mo. 21. (2) Aside from all the foregoing considerations, the judgment of the trial court must be reversed, and judgment entered in this court for the defendant, because the General Assembly of Missouri has passed an act regulating the matters here involved, and changing the rule of law and the policy of the law in Missouri, which has the same effect as if this Court and the Supreme Court had overruled the prior decisions in this State establishing the policy of the law. Acts 1917, p. 143. Under this act and under the agreed statement of facts, that the defendant had no actual knowledge that the checks given to the defendant in the name of the corporation by its president were issued without authority of the corporation, there can be no recovery in this case. The General Assembly had power to pass this act and it applies to this case. 8 Cyc, p. 925; Keene v. Wyatt, 160 Mo. 13 and 16; Hendricks v. Musgrove, 183 Mo. 307; Trust Co. v. Donnell, 81 Mo. App. 151; Insurance Co. v. Hill, 86 Mo. 472; State v. Jackson, 105 Mo. 199; State ex rel. v. Railroad, 9 Mo. App. 532, affirmed 79 Mo. 420; Leete v. Bank, 115 Mo. 184; Railroad v. Cadmore, 103 Mo. 634; Van Rheeder v. Bush, 44 Mo. App. 283; O'Brien v. Allen, 108 Mo. 227; Daggs v. Insurance Co., 136 Mo. 382; State ex rel. v. Hager, 91 Mo. 452; Lovell v. Davis, 52 Mo. App. 342; Sheehan v. Insurance Co., 53 Mo. App. 354; Coe v. Ritter, 86 Mo. 277; Zellers v. Surety Co., 210 Mo. 86; Roenfeldt v. Railroad, 180 Mo. 554; 26 A. & E. Enc. Law (2 Ed.), 695.

*Frumberg & Russell* for respondent.

(1) Where a president or other officers of a corporation uses the checks of the corporation in payment of his private debts, the corporation, or its receiver or trustee in bankruptcy, is entitled to recover the amounts

thereof. Kitchens v. Teasdale Com. Co., 105 Mo. App. 463; St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548; Coleman v. Stocke, 159 Mo. App. 43; Bank v. Orthwein Com. Co., 160 Mo. App. 369; Reynolds v. Gerdelman, 185 Mo. App. 176; Reynolds v. Title Guaranty Trust Co., 189 S. W. 176; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262; Blake v. Bank, 219 Mo. 644; St. Charles Savings Bank v. Edwards Brokerage Co., 243 Mo. 553; Reynolds v. Whittemore, 190 S. W. 594. (2) The same rules of law apply to corporations as to individuals or partnership. Ackley v. Staehlin, 56 Mo. 558; Flannagan v. Alexander, 50 Mo. 50; Price v. Hunt, 59 Mo. 258; Hilliker v. Francisco, 65 Mo. 598; Reyburn v. Mitchell, 106 Mo. 365; Goddard-Peck Grocer Co. v. McCune, 122 Mo. 426; Mansur-Tebbetts Imp. Co. v. Bruton, 159 Mo. 213; Blake v. Bank, 219 Mo. 644. (3) Officers of a corporation are not entitled to salary for the performance of their ordinary duties as such officers unless they enter into a contract with the corporation for the payment of such salaries. Bennett v. St. Louis Car Roofing Co., 19 Mo. App. 349; Besch v. Western Carriage Mfg. Co. 36 Mo. App. 336; Rose v. Carbonating Co., 60 Mo. App. 28; Remmers v. Seky, 70 Mo. App. 364; Ward v. Davidson, ·89 Mo. 454; Taussig v. Railroad Co., 166 Mo. 33. (4) The mere fact that the officers were entitled to a salary would not authorize them to use the funds of the corporation for their private purposes unless the corporation actually received consideration for the checks. Bank·v. Edwards, 243 Mo. 553; Reynolds v. Whittemore, 190 S. W. 594. (5) The agreed statement of facts does not show the consent, with full knowledge, of all the stockholders to the misappropriations of the corporation funds, and the trustee is entitled to recover in right of the corporation. Thompson on corporations (1 Ed.), secs. 4014, 4049; Brick Co. v. Schoeneich, 65 Mo. App. 283; Kitchens v. Teasdale Com. Co., 105 Mo. App. 463; Bank v. Investment Co., 160 Mo. App. 369; Pitts v. Steele Mercantile Company.(6) The trustee in bankruptcy is entitled to recover as the representative of the creditors of the corporation.

Black on Bankruptcy, sec 392; Manufacturing Co. v. Carriage Co., 152 Mo. 401; National Tube Works Co. v. Machine Co., 118 Mo. 365; Coleman v. Stocke, 159 Mo. App. 43. (7) The jurisdiction of the court in this case is purely appellate, and it is confined to an examination of the record and the determination of the question as to whether or not error was committed by the trial judge in matters expressly decided by him. R. S. 1909, secs. 2081, 2082, 2083.

ALLEN, J.—This is an action prosecuted by the trustee in bankruptcy of the Masters Lumber Company, a corporation, to recover the proceeds of forty-nine checks executed in the name of that company, as maker, by S. M. Masters, its president, payable to the order of defendant corporation, which were received and cashed by defendant in payment to it of the individual indebtedness of S. M. Masters and of Marcus Masters, the secretary of the Masters Lumber Company. The petition is in forty-nine counts, and seeks a recovery of the separate amounts so received by defendant, as for money had and received; the total amount sought to be recovered, exclusive of interest, being $5321.31.

The trial, upon an agreed statement of facts, before the court without a jury, a jury having been waived, resulted in a judgment for plaintiff in the sum of $5830.30 —being the aggregated amount claimed in the forty-nine counts of the petition, with interest—and the case is here on defendant's appeal.

A summary of the facts appearing in the agreed statement may be stated as follows:

The Masters Lumber Company was incorporated under the laws of this State on May 18, 1909, with a capital stock of $10,000. At the outset there were but three stockholders who were the three directors. S. M. Masters and one Yewell Rice held all of the stock, with the exception of one share which was transferred to Rice soon after the date of the incorporation. Masters became president and Rice secretary. Later, in January, 1910, the two directors other than S. M. Masters were

replaced by Marcus S. Masters and one Corrington who were nominal stockholders only; and Marcus S. Masters became secretary. Later, on October 13, 1911, the capital stock was increased to $18,000, and one Johnson acquired a stock interest and was chosen a director in lieu of Corrington who ceased to be a stockholder. Thereafter the board of directors consisted of S. M. Masters, Marcus S. Masters and Johnson.

It is recited that Rice "held various amounts of stock from the date of incorporation until October 13, 1911, and there appears in the stock certificate book two stubs showing that there was issued to him an aggregate of forty-nine shares of which there is no record of transfer or cancellation."

No resolution was ever adopted by the stockholders or directors of the company allowing any salaries to officers, but with the knowledge of all the stockholders and directors, and without objection on their part, S. M. Masters claimed and took credit for a salary of $175 per month to and including the month of April, 1913. In May, 1913, without authority from any source, and without the knowledge of Johnson, S. M. Masters credited himself on the books of the company with $1200 as "twelve months back salary;" and thereafter he credited his account monthly with the sum of $275.

Marcus S. Masters, with the knowledge of the stockholders and directors, took credit for a salary ranging from $90 to $110 per month.

From December 1, 1909, until April 12, 1913, defendant furnished S. M. Masters and Marcus S. Masters board and lodging at the "Buckingham Club," a hotel operated by defendant; and beginning January 1, 1910, defendant was paid therefor monthly by checks of the Masters Lumber Company, accepted and cashed by defendant, drawn upon funds of the lumber company in bank, and executed by S. M. Masters as its president; each check being in a sum sufficient to cover the monthly bills for the board and lodging of both of the persons named. On April 12, 1913, S. M. Masters left defend-

193 M. A.—8

ant's hotel, but Marcus S. Masters continued to lodge and board there until March 11, 1914; and during that period defendant was paid for such board and lodging monthly by like checks of the lumber company, executed by S. M. Masters as president, and which were accepted and cashed by defendant. It is the proceeds of these checks, forty-nine in all, that plaintiff trustee seeks to recover in this action.

At the time of the issuance of each of the above mentioned checks the Masters Lumber Company was not indebted to either S. M. Masters or Marcus S. Masters, but the account of each with the company was overdrawn, that of S. M. Masters being largely overdrawn. Crediting S. M. Masters with a salary of $175 per month, his account appears to have been overdrawn $1559.95 on January 1, 1910, when the first of these checks was received by defendant. During 1910 the overdraft increased to more than $11,000, and it continued to increase until May 11, 1914, when it was $24,743.73.

It appears that Johnson, then the only director of the Masters Lumber Company other than S. M. Masters and Marcus S. Masters, on several occasions saw checks of the company drawn by S. M. Masters payable to defendant, and knew that they were to be given in payment of the individual accounts of S. M. Masters and Marcus S. Masters, and made no objection thereto, believing it is said, that the checks were properly issued against credits for salaries. He did not know that the accounts of S. M. Masters and Marcus S. Masters were overdrawn, although he might have ascertained this by an examination of the company's books.

On January 1, 1910, the liabilities of the Masters Lumber Company to creditors, as shown by its books, were $13,628.70 and its assets $20,063.64. On July 31, 1910, the company's indebtedness exceeded its assets by more than $2000; and the deficit steadily increased until bankruptcy intervened, in June, 1914, when the company's indebtedness, as shown by its books, amounted to $48,442.22, while its principal assets, aside from claims

of the character of that in suit, consisted, it is said, of office furniture and fixtures.

It is recited in the agreed statement of facts that all of the accounts proved against the bankrupt estate were "opened or balanced not earlier than January 1, 1913," and that the last items of all of the accounts so proved were of date "not earlier than June 1, 1913," with the exception of eight accounts, two of which began in 1909, and the others in 1911 or 1912. These eight claims aggregated $3856.04.

It is admitted that defendant had no notice or knowledge of the insolvency of the Masters Lumber Company or of the state of the accounts of S. M. Masters and Marcus S. Masters with it; and had no actual notice that the checks received by it were issued without authority.

From the agreed statement of facts it appears that the trustee had brought ten other suits of this character, against various individuals, firms or corporations, seeking, presumably, to recover the proceeds of like checks of the lumber company issued by S. M. Masters in payment of his individual indebtedness. Eight of these suits, for claims aggregating $3160.36, were pending at the time of the trial of this cause below, one of which is now before us on appeal. In one plaintiff had recovered a judgment for $1000, which was paid. And one claim for $31.50 had been paid in full while in suit.

Certain declarations of law requested by defendant were refused. They need not be here set out; the questions raised concerning their refusal, so far as here of consequence, will be noticed below.

In view of the agreed facts submitted we think that it was incumbent upon the trial court to enter the judgment appealed from. Under the decisions of our courts defendant must be held to have taken these checks charged with notice that funds of the Masters Lumber Company were being drawn upon to pay the private indebtedness of its officers. The rule of decision has long prevailed in this State to the effect that one accepting a check of a corporation, drawn by an officer thereof in payment of his private obligations, takes the risk of be-

ing required to restore the proceeds thereof, in an action as for money had and received, in the event that corporate funds were thereby misapplied. [See Kitchens v. Teasdale Com. Co., 105 Mo. App. 463, 79 S. W. 1177; St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548, 136 S. W. 716; Coleman v. Stocke, 159 Mo. App. 43, 139 S. W. 216; Reynolds v. Gerdelman, 185 Mo. App. 176, 170 S. W. 1153; Reynolds v. Title Guaranty Co., 189 S. W. 33; Blake v. Bank, 219 Mo. 644, l. c. 666, 118 S. W. 641; St. Charles Savings Bank v. Edwards Brokerage Co., 243 Mo. 553, 147 S. W. 978; Reynolds v. Whittemore, 190 S. W. 594.]

Defendant, in its answer, and by the agreed statement of facts as well, admits that these checks, so drawn, were accepted and used by it under the circumstances set forth above; and consequently the burden was cast upon defendant to show that S. M. Masters was lawfully authorized and entitled to so draw upon the corporate funds for his private purposes. [See Reynolds v. Whittemore, supra; Bank v. Brokerage Co., supra.]

In this connection appellant seeks to here invoke the provisions of an act of the Legislature of 1917, Laws 1917, p. 143, purporting to alter the law governing cases of this general character, as established by the decisions in this State. That statute is as follows:

"Section 1. Liability of corporation, firm or copartnership.—If any check, draft or order of any corporation, firm or copartnership shall be given in payment of the debt of any officer, agent or employee, of said corporation, firm or copartnership, the payee or other person collecting such check, draft or order shall not be liable to said corporation, firm or copartnership therefor, unless it shall be shown that such payee or other person, at the time of collecting same, had actual knowledge that said check, draft or order was issued without authority of said corporation, firm or copartnership."

"Sec. 2. Conflicting acts repealed.—All laws and parts of laws in conflict or inconsistent with this act are hereby repealed."

But it is quite manifest that the case before us, in which judgment was entered below, on July 14, 1916, is in no wise affected by this statute enacted in 1917. It is argued that the statute affects the remedy only—"relates to matters of practice and procedure," and has a retrospective operation. In this connection many authorities are cited, but it is unnecessary to refer to them here. Putting aside all other questions which this contention suggests, it is entirely clear that we, sitting as an appellate court, cannot rule that the lower court fell into error in failing to apply or conform to a statute not then in existence. The court followed the last controlling decision of the Supreme Court, which is likewise binding upon us since this statute cannot affect the rights of the parties on appeal. [See Sec. 2083, Rev. Stat. 1909.]

That the Masters Lumber Company was not indebted to S. M. Masters and Marcus S. Masters at the time when these various checks were drawn stands admitted. On the contrary the accounts of both were overdrawn at all such times. The question as to the right of either S. M. Masters or Marcus S. Masters to draw any salary, none having been provided by resolution, is raised and discussed in the briefs, but we need not notice it. It is entirely clear that the entry made on the books by S. M. Masters attempting to increase his salary from $175 per month, which he had been drawing with the consent of the directors and stockholders, to $275 per month, and crediting himself with such increase for a prior period of one year, was wholly ineffective. He could not thus arbitrarily increase his compensation as an officer. Assuming that S. M. Masters was entitled to take credit for a salary of $175, and that Marcus S. Masters was entitled to be credited with the salary which he drew, both were constantly indebted to the company during the entire period in which these checks were issued monthly.

But it is argued that under the conceded facts plaintiff trustee is estopped to recover in this action; this being a defense interposed by the answer. It is said that all of the directors and stockholders of the Masters Lumber Company permitted the course of dealing aforesaid,

i. e. permitted S. M. Masters to draw corporate checks, as he pleased, for his private purposes, charging the amounts thereof against himself on the company's books; that under these circumstances the corporation will be held to have ratified such acts, and to be estopped to recover from one who had accepted any such check or checks; and that plaintiff trustee is in no better position in that respect than would the corporation were it suing.

The agreed facts, stated above, do not make it clear that all of the directors and stockholders consented to the unlawful acts of S. M. Masters, so as to estop the corporation from prosecuting an action of this character. It does not appear that Johnson consented to these acts of S. M. Masters with full knowledge of the particular transactions in question. [See St. Charles Savings Bank v. Investment Co., 160 Mo. App. 369, l. c. 379, 380, and cases cited. 140 S. W. 921.] And there is enough in the agreed statement of facts from which to infer that Rice, whose consent does not appear, remained a stockholder of record. But, however this may be, the trustee in bankruptcy, this plaintiff, sues not merely in behalf of the corporation or its stockholders, but as the representative of the creditors of the corporation as well. And certainly the creditors of the Masters Lumber Company have done nothing whereby to estop their representative from prosecuting an action to recover the corporate funds which were wrongfully diverted and misappropriated in the manner above set forth. In this connection see: Manufacturing Co. v. Carriage Co., 152 Mo. App. 401, 133 S. W. 412; Tube Works Co. v. Machine Co., 118 Mo. 365, 22 S. W. 947. In the case last cited, l. c. 376, it is said:

"A corporation has no right as against its creditors to apply its assets in satisfaction of the debts of other persons which it is under no obligation to pay. It is said: 'A corporation cannot give away its property or transfer it, unless in good faith for value, if its creditors would thereby be left unsecured' (2 Morawetz on Private Corporations, sec. 789). We are unable to make a distinction between directly giving away the property and

using it in payment of the private debts of its officers. Either would be fraudulent as to creditors (Morawetz on Corporations, sec. 792)."

The argument is advanced that since each check received and cashed by defendant was for an amount less than the salary of S. M. Masters for the current month (i. e. $175), with the exception of two checks, he was lawfully entitled to draw the checks upon the corporate funds (with the exception of the two mentioned) and charge the same against his account for salary. But this argument we think is clearly without merit. Granting that S. M. Masters was entitled to draw such salary, and that neither the corporation nor its creditors would have been injured had he merely taken his salary by means of checks drawn and used as were the checks in controversy, it does not follow that there was no misappropriation of corporate funds in issuing checks for amounts within his monthly salary. As stated above, S. M. Masters was heavily overdrawn on the company's books during all of the period in which the checks were issued. If he was entitled to a salary, he had so far overdrawn his account by January 1, 1910, that he was indebted to the company in a sum exceeding $1500, and thereafter his indebtedness greatly increased. Giving him full credit for his salary, he was at no time, during the period with which we are immediately concerned, entitled to draw checks upon the corporate funds in payment of his individual indebtedness.

It is further argued that in any event the plaintiff cannot recover, as for a wrongful diversion of the corporate funds, for the benefit of creditors of the Masters Lumber Company whose present claims were not in existence, in whole or in part, when such diversion occurred. And it is contended also that if the trustee is entitled to recover for the benefit of creditors whose accounts against the lumber company were in existence when defendant received any of these checks, then a recovery of only a part of the total amount claimed by plaintiff may be had, for the reason that the amount sought to be recovered in this action, together with the amounts recov-

ered or sought to be recovered in the ten other like ac-
tions, instituted by the trustee as above stated, exceeds,
it is said, the claims of creditors thus entitled to share
in the benefit of any such recovery.

It is unnecessary to set forth the elaborate argument
of counsel touching the matter, for we think that it pro-
ceeds upon a fallacious theory. It is true that the Mas-
ters Lumber Company, under the active management of
S. M. Masters, by creating new obligations, succeeded in
paying off in large part—though not in whole—those who
were creditors during the period of time in which these
checks were given to defendant. But the company was
largely indebted when the first of these checks was issued
to defendant, and its indebtedness rapidly increased
during all of the period mentioned. From and after
July 31, 1910, the corporation was insolvent, and its in-
solvency merely became more hopeless as time went on,
until its bankruptcy in June, 1914, when, as said, it owed
$48,442.22 and had on hand no assets worth mentioning;
a large part of its corporate assets, which constituted
—in a well understood sense—a trust fund for the bene-
fit of creditors, having in the meantime been diverted to
pay the private debts of its officers. With these facts in
view we see no merit in the argument that "subsequent
creditors" were not prejudiced by these wrongful acts of
S. M. Masters. And we are of the opinion that the case
of Reynolds v. Faust, 179 Mo. 29, 77 S. W. 855, relied
upon by appellant in this connection, has here no applica-
tion.

It is urged that in equity and good conscience de-
fendant should not be required to restore the proceeds
of these checks, taken by it in good faith for the pur-
poses and under the circumstances mentioned. The an-
swer to this is that under the established rule of decision
in this state, which is here unaffected by the statute,
supra, such a check carries upon its face notice of its
"irregular and illegal character" (St. Louis Charcoal
Co. v. Lewis, supra), and the taker thereof incurs the
risk of being required to respond to the corporation or
its successor in law as for having wrongfully received

corporate assets. This doctrine we cannot depart from, were we disposed to do so, since our duty is made plain by controlling decisions of the Supreme Court, binding upon us.

We perceive no reversible error in the record and it follows that the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.