[No. 8588.    Department One.    July 14, 1910.]

BOWLES COMPANY, *Respondent*, v. CHARLES CLARK *et al.*, *Appellants*, J. A. FRASER, *Defendant*.[1]

BILLS AND NOTES—CHECK BY STRANGER—RIGHTS OF PAYEE—DUTY TO ACCOUNT. The payee of a check drawn by a stranger to him is not a purchaser of the check nor a holder in due course, and if he receives it he is bound to account to the drawer upon demand.

PRINCIPAL AND AGENT — AUTHORITY OF AGENT — DUTY OF THIRD PERSONS—DILIGENCE—MECHANICS' LIENS. Where a company dealing in plumbing supplies had refused an irresponsible contractor credit, and the contractor brought it a check from the owner of a house in course of construction, payable to the dealer, the dealer must use reasonable diligence to ascertain whether the contractor owed the check or was delivering it as agent; and where the contractor, instead of using it to purchase supplies as directed by the drawer of the check, paid off an old account, took the balance in cash, and secured further credit for the supplies needed, the dealer cannot claim a mechanics' lien against the house for the supplies furnished, intended by the owner to be paid for by the check.

Appeal from a judgment of the superior court for King county, Main, J., entered September 22, 1909, in favor of the plaintiff upon an agreed statement of facts, in an action to foreclose a materialman's lien. Reversed.

*Chauncey L. Baxter* and *John R. Wilson*, for appellants.

*McClure & McClure*, for respondent.

FULLERTON, J.—The appellants Clark are the owners of certain real property in the city of Seattle on which they constructed a dwelling. At the time the house was in the process of construction, defendant Fraser was the manager of the Enterprise Plumbing Company, and as such manager contracted with the Clarks to furnish the necessary materials and to do certain plumbing required by the plans of the house. After he had partially performed his contract he informed the appellants that the balance of the material to complete the

[1]Reported in 109 Pac. 812.

work would cost between $65 and $70, and that he did not have such materials and could not obtain them on credit, but that they could be procured from the respondent. The appellant Charles Clark thereupon made out a check for the sum of $70, payable to the respondent, and delivered it to Fraser with the request that he get the necessary materials from the respondent and deliver the check to it in payment. Fraser took the check and delivered it to the respondent as directed, but requested it at the time he did so to credit $36.71 thereof to a certain account which he had theretofore purchased for the Clark dwelling and for which he had not paid, to credit $18.29 thereof to his general account, and to pay him the balance of $15 in cash. The respondent cashed the check and made disposition of the money as thus requested. Later on, Fraser obtained from the respondent plumbing supplies of the value of $68.74, which were delivered at the house of the appellants and actually used by Fraser in completing his plumbing contract with them. During all this time the appellants and the respondent were strangers, having had no direct dealings with each other of any kind whatsoever. Within the statutory time for filing a materialman's lien, the respondent, claiming that the materials last delivered had not been paid for, filed a lien on the appellants' dwelling house, and thereafter brought the present action to foreclose the same. On the trial the trial judge entered a decree foreclosing the lien. This appeal was taken therefrom.

The record does not disclose the ground upon which the trial judge rested his decision, and we are not otherwise advised as to the reasons he deemed controlling. The respondent's learned counsel, however, argue upon the theory that the check was a negotiable instrument coming into the respondent's hands for value and in due course, and that it, as a *bona fide* holder thereof, was in no manner liable to account to the appellants therefor. On this question they say in the brief:

"The check came into plaintiff's hands in due course of business for a valuable consideration and without notice of any irregularity whatever. It was deposited in the bank, the amount thereof collected and passed to plaintiff's credit. Let us suppose that the additional supplies for which lien is claimed had not been furnished. In that event would Mr. Clark be in a position to sue plaintiff and recover $33.29, the amount now in dispute? Manifestly he could recover nothing, for the check having come into plaintiff's hands for a valuable consideration, without notice of any irregularity whatsoever, became plaintiff's property and plaintiff's rights thereunder could have been enforced by suit, if necessary. . .

"This check was not received by plaintiff as a loan; it was not received by plaintiff to be held for Mr. Clark's benefit. Plaintiff is not in the banking business and is entitled to have its wishes consulted before receiving money from its customers for goods to be purchased later and for which money it must account. So far as plaintiff was informed and so far as the record in the case goes, plaintiff at the time it accepted this check had no intimation that it would be called upon to furnish additional materials for the dwelling. When the check was presented to the plaintiff, disposition of the proceeds was made exactly as was requested by Mr. Clark's agent, Mr. Fraser. Mr. Clark's account was entirely extinguished and full value was given for the amount represented by the check. This was as far as plaintiff was obliged to go."

The question presented by the record is indeed somewhat novel, but it has seemed to us that it cannot be solved by reference to the laws relating to negotiable instruments. The respondent was in no sense a purchaser of the check, nor was it a holder thereof in due course, as that phrase is defined in commercial law; it was the payee named in the check, and its obligations to the drawer of the check were like those of payees in checks generally, it was obligated to account to the drawer for the check or for its proceeds. The general rule in this respect was not changed by the fact that the respondent was a stranger to the drawer and did not know the purposes for which the check was forwarded to it. If it did not care to assume the responsibility of accounting, it should

have refused to receive it. By doing this it could have re-
lieved itself of any liability whatsoever, but when it accepted
the check, even though it did not know the purposes for
which it was drawn, it obligated itself to account therefor.
It owed no voluntary duty of accounting, perhaps, but cer-
tainly a duty to account when called upon by the drawer.
To so hold, is not, as the respondent's counsel seem to argue,.
making the respondent the drawer's debtor against its will.
On the contrary, the respondent assumed that relation volun-
tarily. It accepted the check instead of refusing it, and it
was this act that gives rise to its liability.

Having a duty then to account for the check, the question
remains, did it so account when it appropriated it to Fraser's.
use. It seems to us that it did not. It is true that Fraser
was the appellants' agent for a special purpose, and it is
true also that the respondent, since it was not informed of the
special limitations upon his powers, had the right to assume
that his powers were such as the circumstances surrounding
the transaction made them appear to be. But we think it too
much to say that these circumstances were of such a nature
as to warrant the belief that the property in the check was
the property of Fraser. The check itself contained a dis-
tinct warning to the contrary. It was made payable to the
respondent, a stranger to the drawer, and not to Fraser, and
it is not reasonable to suppose that Fraser would have ac-
cepted payment of an obligation due himself in a form which·
he could not use without the consent and co-operation of a
third person. Fraser, moreover, as the respondent well
knew, was without credit with the respondent, or elsewhere,
and the fact that a person is not to be trusted financially is.
some evidence at least that his purported statements of fact
are not to be believed when they run contrary to ordinary
business dealings. A person dealing with an agent must not
act negligently, but must use reasonable diligence to ascertain
whether the agent acts within the scope of his powers. He is
not authorized under any circumstances to blindly trust the·

agent's statements as to the extent of his powers, much less can he do so when he knows that the agent is untrustworthy, and the very circumstances under which the statements are made bear witness to their untruth. Here the circumstances were such as to show clearly, we think, that the acts and representation of the agent were beyond the scope of his apparent authority.

The case is not altered by the fact that the respondent had sold Fraser certain supplies which had been used in the construction of the appellants' building. The appellants did not know this fact, and the respondent had no reason to believe that the appellants knew it. In determining whether an agent acts within the apparent scope of his authority, the acts of the principal alone are to be considered. The principal is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused by the agent. 2 Enc. L. & P. 960.

The judgment appealed from is reversed, and the cause remanded with instructions to enter a judgment in favor of the appellants to the effect that the respondent take nothing by its action, and that the appellants recover their costs.

RUDKIN, C. J., CHADWICK, MORRIS, and GOSE, JJ., concur.