STERLING LEATHER WORKS, complainant,

*v.*

FRANK SCHWARZWAELDER, defendant.

[Decided October 11th, 1917.]

Appeal of the Liberty Trust Company.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lane, who filed the following opinion:

This is an interpleader suit brought by the Sterling Leather Works, which was liable upon two mortgages, one made by Franklin L. Meyer, and the other by Frederick F. Meyer and wife, each to Mary P. Butler, each registered in the register's office of Essex county upon the 13th day of May, 1897. The mortgages secured one debt, evidenced by a bond made by Frederick F. Meyer and Franklin L. Meyer to Mary P. Butler, dated May 1st, 1897, for the sum of $1,400. The money due has been paid in court and the dispute is as to the distribution of this fund.

The contentions of the parties may be briefly stated: The Liberty Trust Company claims the fund by virtue of its possession of the bonds and mortgages from the 2d or 3d day of September, 1913, down to the time of the filing of the bill. It claims to have obtained title through a series of assignments, the first purporting to be made by Walter S. Baker and Minnie A. Baker, respectively, executor and executrix of the estate of Mary P. Butler, deceased, to William H. Daly, dated December 20th, 1905, and recorded in the register's office of Essex county upon the 2d day of September, 1913, the next purporting to have been made by William H. Daly to George W. Clark, dated the 1st day of August, 1913, and recorded on the 2d day of September, 1913, and next purporting to be made by George W. Clark to Mabel Daly, dated the 1st day of August, 1913, and recorded on the 2d

day of September, 1913, the next purporting to be made by Mabel Daly to the Liberty Trust Company, dated the 15th day of August, 1913, and recorded on the 3d day of September, 1913. The originals of the first three assignments have been lost or destroyed; they never were in the possession of the bank. The original assignment from Mabel Daly to the bank, and the original bond and the mortgages were in the possession of the bank from on or about the 3d day of September, 1913, down to the time of the filing of the bill of complaint, and were taken by the bank as security for a loan made by the bank for the sum of $2,-500, ostensibly to Mabel Daly on her note, but really for the benefit of Crocker, who was at the time the chairman of the executive committee of the bank and apparently its controlling influence. There is sufficient due upon the Daly loan to exhaust the fund. Each of the assignments purported to be witnessed and acknowledged by and before Crocker. Schwarzwaelder, as sole acting executor of the estate of Ronan, claims the fund on the ground that on or about December, 1905, the bonds and mortgages were purchased by Ronan for full consideration from the Butler executor and executrix to Ronan, that Crocker acted as attorney for Ronan, and that the assignment, together with the bonds and mortgages, was left in his possession until the death of Ronan in February, 1907; that upon his death and probate of his will, Schwarzwaelder and Crocker qualified as executors; that the assignment and the bonds and mortgages were still left with Crocker for safekeeping; that interest during the life of Ronan was paid or credited to him, and that after his death interest was paid to his estate regularly down to the 1st of December, 1914, at about which time Crocker disappeared.

The assignment, if it existed, from the Baker estate to Ronan has been lost or destroyed. Crocker was removed shortly after his disappearance as executor, and Schwarzwaelder has been since acting as sole executor.

The case has given me considerable concern. Any decree which can be made will result in a loss to one of two innocent parties. Counsel on each side has diligently endeavored to supply the court with all the information that it is possible to obtain. Great difficulty arises because of the disappearance of Crocker and the

death or removal of the representatives of the Butler estate and the consequent inability to obtain any evidence from these sources. The case was fully argued and elaborately briefed. Because of the conclusion to which I have arrived, it will, however, be unnecessary to refer in detail to the numerous cases cited.

I find that the assignment from the Butler estate to Ronan did, in fact, exist, and that the paper purporting to be an assignment from the Butler estate to Daly was a forgery.

Schwarzwaelder testifies that he participated in the negotiations which resulted in the purchase by Ronan of the bonds and mortgages. Ronan was interested in the Sterling Leather Works, and the reason he took over the bonds and mortgages was that the Butler estate demanded payment which the Sterling Leather Works at that time could not make. He says that about the time of this transaction, which must have been in the latter part of 1905, he saw the assignment at Crocker's office; that after the death of Ronan he saw the assignment and the bonds and mortgages in Crocker's possession when they were making an inventory of the estate. The inventory filed by Crocker and Schwarzwaelder, as executors, dated May 16th, 1907, and filed in the surrogate's office of Essex county sets out as one of the assets the Meyer mortgage of $1,400; the final account of the Baker estate, filed in the same office, shows a charge to them as follows: "June 1st, 1905, to interest for the Frederick F. Meyer mortgage, interest due May 1st, $42; December 21st, 1905, interest due on mortgage of Frederick F. Meyer and wife, May 1st to date, $53.43." This demonstrates that it was on the 21st day of December, 1905, that the Butler estate parted with the bonds and mortgages. Schwarzwaelder says that an account of the Ronan estate was prepared in which the interest on the Meyer mortgage was credited and that he was told by Crocker that it had been filed, whereas, in fact, it never was; that the assignment at the time he saw it in Crocker's office, purported to be recorded in the register's office, and bore the register's stamp, whereas, in fact, it never was recorded.

Unless I disbelieve, and I find no occasion to do so, the testimony of Schwarzwaelder, I must find that there was in existence about December, 1905, what purported at least to be an assign-

ment from the Butler estate to Ronan, and that such assignment remained in existence in the custody of Crocker for some time after the death of Ronan, in 1907.

When there is considered the circumstances with respect to the Daly and Clark assignments, it is clear that the Butler assignment to Ronan was genuine. There is no doubt but that Ronan, at or about December, 1905, actually bought for full consideration the bonds and mortgages, and that the bonds and mortgages were in Crocker's possession, as attorney for Ronan; that Crocker recognized the ownership of Ronan and the Ronan estate up to at least the time that the last check for interest was endorsed by him, "Estate of William Ronan, Roland D. Crocker, executor." This check is dated May 15th, 1911. William H. Daly, George W. Clark and Mabel Daly were all examined. Daly testifies distinctly that he had no knowledge of the transaction which apparently resulted in an assignment from the Butler estate to him, and that it is impossible that a *bona fide* purchase of these mortgages could have been made for his account by Crocker at any time prior to 1909. Clark testifies that he has no knowledge of the transaction. I conclude that the assignments made from Daly to Clark, and from Clark to Mabel Daly, whether actually signed by Daly or Clark or not, were for the sole purpose of putting the apparent title in Mabel Daly so that Crocker might use them as collateral to the proposed Mabel Daly loan from the Liberty Trust Company. It is significant that all three of these purported assignments were recorded upon the same day, at the same hour and practically simultaneous with the loan to Mabel Daly; further, that the original assignments were never exhibited to or returned to the bank, whereas the undoubtedly genuine assignment, made from Mabel Daly to the bank and recorded upon September 3d, was delivered to it.

I conclude that the alleged transaction by which Daly apparently got title from the Butler estate could not have taken place, if legitimate, prior to 1909. If it took place after 1909, the paper could not have been signed by the representatives of the Butler estate. Unless the representatives of the Butler estate signed two assignments, one to Ronan and the other to Daly, thus committing a fraud, one or the other is a forgery. There

is no reason for doubting the integrity of the representatives of the Butler estate. Although none of the original papers are here, all of them having been destroyed by Crocker to prevent discovery of his fraud, we have the evidence of one man that he actually saw the original Ronan assignment; there is no evidence as to anyone having actually seen the original Daly assignment. The probabilities of the case fit in with the *bona fides* of the Ronan assignment.

Upon the whole case, therefore, I find that the Ronan assignment was legitimate and that the Daly assignment was a forgery, and that it was concocted by Crocker as a part of his scheme to get from the Liberty Trust Company $2,500 upon the note of Mabel Daly.

The claim of the Liberty Trust Company must fall unless the Ronan estate is estopped from setting up its rights. I think that it was not. It is true that the papers were left by Ronan in his lifetime with Crocker as his attorney, and by Schwarzwaelder thereafter as the co-executor and also the attorney of the estate. This course is not at all unusual. *Leithoff* v. *Dennis, 98 Atl. Rep. 242; Brewster* v. *Entz, 97 Atl. Rep. 156; Melick* v. *Liberty Trust Co., 85 N. J. Eq. 29.* Crocker, prior to his departure in 1914, was of unblemished reputation, of apparently large affairs, full financial responsibility, and was uniformly trusted. There was no reason for either Ronan or Schwarzwaelder to assume that he would commit a fraud. It was not incumbent upon either Ronan or Schwarzwaelder to themselves examine the record to ascertain whether or not the Ronan assignment had been recorded. If Crocker has assumed to act as an executor of the Ronan estate, and should have assumed either by an assignment purporting to be executed by the Ronan estate, or by manual delivery of the bonds and mortgages to transfer title to the Liberty Trust Company, a question might have arisen which I am not called upon to determine.

If Schwarzwaelder, as executor, was negligent, so was the bank. It depended upon Crocker. It knew that Crocker was the active party in applying for the Mabel Daly loan. It made no investigation as to the validity of the bonds and mortgages—required no estoppel agreement from the mortgagor. If it had it would have

discovered the fraud. It did not require that the original assignment should be exhibited to it; after their record it did not require their delivery to it. It depended simply and ·solely upon the report of its counsel who was associated with Crocker as to the record. That record discloses that these three assignments, one purporting to be made as far back as 1905, and two purporting to be made about the same date in 1913, were all recorded upon the same date in 1913, palpably, for the purpose of assisting in securing the loan. While the knowledge of Crocker is not to be imputed to the bank, under the cases, yet the bank can hardly complain that Schwarzwaelder and Ronan did only what it itself did, so far as trusting Crocker was concerned.

I will advise a decree awarding the fund in dispute to the Ronan estate.

*Mr. Archibald F. Slingerland,* for the complainant.

*Messrs. Lintott, Kahrs & Young,* for the defendant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Lane.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—14.

*For reversal*—None.