[No. 17739.   Department Two.   May 17, 1923.]

STATE BANK OF CONNELL, *Respondent*, v. PACIFIC GRAIN COMPANY, *Appellant*.[1]

BILLS AND NOTES (71)—DRAFTS—HOLDER IN DUE COURSE—RIGHTS OF JOINT PAYEE. Where the owner of wheat, subject to a first mortgage to a bank and a second mortgage to a grain company, sold it to the agent of the grain company, taking in payment a draft on the grain company payable to himself and the bank, the bank may buy the owner's interest in the draft, and, upon giving him credit for the amount of the draft, becomes a holder in due course, notwithstanding it was named as a joint payee.

ESTOPPEL (20)—ISSUANCE OF DRAFT—RIGHT TO PROCEEDS—RELIANCE ON CONDUCT OF DRAWER. Where the agent of a second mortgagee of wheat stored in its warehouse bought the wheat and gave in payment a draft on the second mortgagee, payable to the owner and to a bank holding a first mortgage, the bank had a right to purchase the owner's interest in the draft and give him credit for the amount on the assumption that the owner's interest was absolute and free from indebtedness to the drawer; and the second mortgagee is estopped to assert the lien of its second mortgage against the draft in the hands of the bank.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered June 29, 1922, upon findings in favor of the plaintiff, in an action on a draft, tried to the court.   Affirmed.

*Tustin & Chandler*, for appellant.

*E. M. Gibbons*, for respondent.

FULLERTON, J.—In this action the respondent, State Bank of Connell, plaintiff below, recovered against the Pacific Grain Company, upon a draft given in payment for wheat.   The findings state the facts of the case, and so much of them as are necessary to an understanding of the question involved, follows:

"That prior to the first day of September, 1921, plaintiff held a valid crop mortgage upon the wheat

[1]Reported in 215 Pac. 350.

crop of one Ray Gardner in Franklin county, Washington, in the principal sum of $1,200, and the defendant Pacific Grain Company held a second mortgage on the same crop in the sum of principal and interest as of September 3, 1921, of $275.10; that both these mortgages were valid and subsisting liens upon the wheat belonging to Ray Gardner; that the wheat was stored partly in the warehouse of the Pacific Coast Elevator Company and the balance in the warehouse of the Interior Warehouse Company at Kahlotus, Washington; that warehouse receipts for this grain were issued by the respective parties (warehouses) at plaintiff's request, in favor of the plaintiff, and were delivered to plaintiff by virtue of its first mortgage thereon.

"That on the 3rd day of September, 1921, the said Ray Gardner, having received said warehouse receipts from the plaintiff, presented said receipts to defendant Pacific Coast Elevator Company, to which defendant the said Ray Gardner then and there sold the wheat stored by him in the warehouse of said defendant; that the agent of the Pacific Elevator Company, A. H. Phillipay, thereupon drew a certain draft in words and figures as follows and delivered same to the said Ray Gardner:

" 'No. 11084.
" 'Spokane, Wash., 9-3-1921.
" 'Pacific Coast Elevator Co., Agent,
" 'Pacific Grain Co.,
" 'Board of Trade Building.
" 'Pay to the order of Ray Gardner and State Bank of Connell $719.21, Seven Hundred Nineteen and 21-100 Dollars. And charge to account of Pacific Grain Company.          Pacific Coast Elevator Company, Agent. :
" 'A. H. Phillipay, Agent.
" 'To Pacific Coast Elevator Co., Agent Pacific Grain
" 'Co., 644 Peyton Bldg., Spokane, Wash.'

"That a few days thereafter the said Ray Gardner, producing the proper receipts therefor, sold the balance of said mortgaged wheat in the warehouse of the Interior Warehouse Company to the Interior Warehouse Company, which purchaser thereupon issued its draft in which the plaintiff and the said Ray Gardner

were named· as payees, said draft being in the sum of $2,397.17.

"That prior to these transactions the said Ray Gardner for sometime had been and he then was a regular customer of the plaintiff; that upon receipt of the drafts above mentioned the said Ray Gardner duly and regularly indorsed and transferred both of them to the plaintiff, and the plaintiff bank gave the said Ray Gardner credit on its books for the total amount of said drafts in payment of plaintiff's first mortgage on said wheat, also for other advances that had been made to him by the plaintiff, also in payment of a note made to other parties but then held by the plaintiff; that the checks issued to the plaintiff by the said Ray Gardner in payment of all said items were in the total sum of $2,960.22.

"That the plaintiff is a banking institution located at Connell, Washington, which bank in due course of business as such banking institution, sent the said draft for $719.21 to defendants at Spokane, Washington, for presentation to said defendants, and upon presentation to them, defendants refused to pay the same and on September 14, 1921, said draft was duly and legally protested for non-payment and because of said non-payment and protest of the draft, plaintiff was compelled to pay and did pay the protest fees of $3.10.

"That when Ray Gardner indorsed said draft for $719.21 to the plaintiff, plaintiff bank gave said Gardner credit therefor for the total amount thereof, which sum was placed and deposited to the checking account of said Ray Gardner in said bank.

"When the $719.21 draft was presented at Spokane for payment, defendants learned of the sale of all of the Gardner wheat and of the issuance of the drafts therefor as before stated, without any provision having been made for the payment of defendants' second mortgage. The district agent of defendant then called plaintiff on the telephone and was advised concerning the details of the transactions at the bank; that the drafts had been indorsed and deposited and checks issued by Ray Gardner to the plaintiff, of the fact that

the balance then on deposit in plaintiff's bank to the credit of Gardner was insufficient to fully pay and satisfy defendants' second mortgage, also that the plaintiff bank declined to carry Gardner for the amount of said second mortgage. Defendant then notified plaintiff that it would dishonor its draft and thereupon did dishonor the same and deducted therefrom and paid to itself the amount of the Pacific Grain Company mortgage and mailed to the plaintiff its check for the difference between the purchase price of said wheat and the amount of the Pacific Grain Company mortgage; that plaintiff refused to accept said check and returned it to the defendant and defendant duly tendered to plaintiff the amount of said difference, to-wit: $444.11, prior to the commencement of this action and has kept said tender good by paying said amount in court for the benefit of the plaintiff; that no part of the sums received by Gardner on account of said drafts, which drafts were endorsed to the plaintiff, was used or attempted to be used in payment of the second mortgage in favor of the Pacific Grain Company on said wheat which was sold.''

From these findings the court concluded that the plaintiff was entitled to a judgment against the defendant for the amount of the draft. Such a judgment was thereafter entered, resulting in this appeal.

Contending for a reversal of the judgment, the appellant's learned counsel argue that the respondent bank was not a holder of the check in due course, and from this draw the conclusion that the check was subject to the same defenses in its hands that it would have been subject had it been made payable to Gardner alone and he were attempting to enforce its collection. We cannot, however, follow counsel. It is not the rule that a payee named in a draft or check can, under no circumstances, be a holder in due course. We need not point out the many instances where he is such, but where, as here, he is named as payee jointly with an-

other in a draft in which that other has a part interest, and takes that other's interest for value in due course, he holds it free from any infirmity to which it might be subject while in the hands of the other. Here, there .was nothing in the circumstances which would put the appellant upon inquiry as to the extent of Gardner's title. The draft was fair on its face, was issued in a regular way, and, in so far as the respondent could know, for a valuable consideration. When it purchased Gardner's interest in the draft, therefore, it acquired not only his real title to it, but his apparent title also.

There is nothing in the case of *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. (N. S.) 613, which militates against the conclusion we here reach. That was not an action upon a draft or check. The check there in question was duly paid upon presentation to the bank on which it was drawn, and neither the drawer of the check, nor any one else, questioned the right of the payee to collect it. The sole question for decision was whether the payee accounted to the right person for the proceeds of the check; a wholly different question from the one now before us.

Nor are we able to follow the appellant in its contention that the facts of the instant case bring it within the rule of the case of *National Citizen's Bank v. Ertz,* 83 Minn. 12, 85 N. W. 821. The question in that case was whether the false representations made by an agent with respect to the sale of certain property of the principal could be ascribed to the principal, and whether, if they could be so ascribed, the principal could recover on a check indorsed by the agent, given the agent in payment for the articles so sold, on the theory that the principal was a holder of the check in due course. The court held that the representations could be so ascribed, and held further that the prin-

cipal was not a holder in due course.. Plainly, this is not the question here involved. There, the principal was the beneficial owner of the check at all times, and when he took it from his agent he was but receiving his own property. Here, the respondent bank was not the beneficial owner of the entire check. It had but a partial interest therein, and the remainder it could buy with the same legal consequences it could buy any other form of commercial paper.

But we think there is another ground upon which the judgment can rest. The appellant issued the draft without indicating in any way that the payees named therein were not entitled to the fund represented by it. The bank's interest in it was superior to the interest of the drawer, and it was entitled to its proportion of it in any event. It also had the right to assume that Gardner's interest in it was also absolute; it had the right to assume that the drawer had settled with Gardner for any indebtedness owing by him to it, and that Gardner's interest in the draft represented the balance due him. As it was led to believe this because of the act of the appellant, and as it purchased Gardner's interest for value acting on that belief, the appellant is estopped to question its right to the proceeds of the check.

The conclusion of the trial court was right, and its judgment will stand affirmed.

MAIN, C. J., TOLMAN, PEMBERTON, and BRIDGES, JJ., concur.