DIAMANT *v.* KEANE, HIGBIE & CO.

1. BILLS AND NOTES—LIABILITY OF INDORSER TO MAKER FOR LOSS.
Stock brokerage firm named as payee in check which it indorsed and passed on to another brokerage firm through latter's misrepresentation is liable to maker for loss sustained, although it never received any of money, never had unconditional possession of check, and maker was stranger to it (2 Comp. Laws 1929, § 9314).

2. SAME—INDORSER MAY NOT DENY DELIVERY TO HIM.
Payee who receives and indorses check and thereafter passes it to another may not be heard to say that check was not delivered to him (2 Comp. Laws 1929, § 9314).

Appeal from Wayne; Webster (Clyde I.), J. Submitted June 10, 1932. (Docket No. 72, Calendar No. 36,374.) Decided October 3, 1932.

Assumpsit by Nicholas S. Diamant against Keane, Higbie & Company, a Michigan corporation, as indorser of plaintiff's check. Judgment for defendant. Plaintiff appeals. Reversed, and judgment ordered entered for plaintiff.

*G. Leslie Field* and *E. Reed Hunt* (*John M. Chase,* of counsel), for plaintiff.

*Carey, Armstrong, Weadock & Essery* (*J. Thomas Smith,* of counsel), for defendant.

NORTH, J. The single question of law presented for determination in this case is:

"Is the payee of a check liable to the maker thereof, who is a stranger to him, when the payee,

without communicating with the maker and without authority from him, indorses the check to a third person who procures the indorsement by misrepresentation and cashes the check?''

Plaintiff purchased on margin through one Thomas J. Leach, 100 shares of stock of the Riverside Forge Company at a total cost of $3,540 including commission. Leach was a salesman of Richman Phipps & Company. The company confirmed the purchase. Thereafter Leach informed plaintiff that he would be required to pay $1,100 for carrying this stock on margin. Plaintiff claims he had some doubt of either the integrity or the financial responsibility of Richman Phipps & Company, and in consequence thereof he arranged through Leach to have the account incident to this stock transaction carried by another brokerage firm, Keane, Higbie & Company, defendant herein. Without communicating in any way with defendant, plaintiff made his check for $1,100 payable to defendant and delivered it to Leach with instructions to turn the check over to defendant so that plaintiff's account could be carried by defendant on margin. It is a fair inference from the record that Leach failed to follow plaintiff's instructions, and instead delivered the check to Mr. Richman Phipps. The latter presented the check to Mr. McNabb, secretary and treasurer of Keane, Higbie & Company, and requested the indorsement of the check by the payee. Richman Phipps at that time falsely represented to Mr. McNabb that plaintiff had inadvertently made ' the check payable to Keane, Higbie & Company instead of to Richman Phipps & Company. The confirmation of this sale of stock by the latter company was shown to Mr. McNabb. An attempt was made by Mr. McNabb to call plaintiff on the telephone to

verify the story of Mr. Richman Phipps. Unfortunately it developed that plaintiff was out of the city and Mr. McNabb did not get into communication with him. Observing that the check was certified, and evidently believing the facts to be as stated by Richman Phipps, the check was indorsed without recourse by the defendant. It was cashed by Richman Phipps & Company, which shortly thereafter became a bankrupt. Upon being advised of the indorsement of his check by defendant, plaintiff demanded payment, and later brought this suit. The declaration contains a special count in assumpsit and also the common counts. After hearing the case without a jury, the circuit judge entered judgment for defendant, and plaintiff has appealed.

The circuit judge based his finding for defendant upon his determination that plaintiff's negligence was the proximate cause of the loss for which he seeks to recover. We quote the circuit judge's finding in part:

"He (plaintiff) gave this check to a man that he mistrusted and only purchased the stock to get rid of him. While all of those things could happen and still the defendant be liable under these cases (*Sims v. U. S. Trust Co.,* 103 N. Y. 472 [9 N. E. 605]; *Bristol Knife Co.* v. *First National Bank,* 41 Conn. 421 [19 Am. Rep. 517]; *Bowles Co.* v. *Clark,* 59 Wash. 336 [109 Pac. 812, 31 L. R. A. (N. S.) 613]), I think that this case at bar should be decided by the facts that took place after the check was given and after it was signed by the defendant, and I believe that that is the test. * * * Now, when it comes to the defendant, he has an obligation to the maker notwithstanding that he has had no contractual relations with him whatsoever and is a perfect stranger; just the same when he puts his signature on the back of the check and thus makes it possible

for the check to be cashed, I think beyond all question he is liable. But the other legal proposition I think comes in there, and it must be the proximate cause or direct cause, his act must be the act which causes the loss, and if the plaintiff's conduct is such that he either is doing something or failing to do something, in either event is the real cause of the loss, notwithstanding the indorsement, then I think under those circumstances that the defendant is not liable. * * * The plaintiff then (after issuing the check) sits still and does nothing, does not inquire whether the check was deposited, does not make any offer to follow it up for a period of one month. For almost one month, there was no loss, there was no damage to the plaintiff, because any time during that period the plaintiff could have gone down and paid the balance and received his stock, could have gone down and found out that the check was not deposited with Keane, Higbie but was deposited with the other concern, could have changed his mind, closed his account and received his money less only what was the difference between the value of the stock at the time he purchased it, whenever he closed his account. *The loss really comes about because of his* (plaintiff's) *failure to do anything after the check was indorsed.*"

While the effort of the circuit judge to shape the law to the equities of the case as he viewed them may be commendable, we cannot overlook the importance of an established principle of the law of negotiable instruments, or depart from principles which make for safety in the field of commercial activity. Surely there was nothing unusual in plaintiff's making his check payable to the broker with whom he wished to carry the account, nor was plaintiff negligent in placing this check in the hands of the stock salesman with directions to deliver it to the defendant broker. We cannot agree with the

circuit judge in holding that one who so uses his check must within a reasonable time resort to some follow-up investigation for the purpose of ascertaining if there may not have been a misappropriation of the proceeds of the check. It would be an undue hardship to impose such a rule of law upon the users of commercial paper in the business world. The following cases hold that when the payee indorses and delivers the check to a third party such payee must account for the proceeds, at least to the extent that the one who signs the check is damaged thereby. *Sims* v. *U. S. Trust Co.,* 103 N. Y. 472 (9 N. E. 605); *Bristol Knife Co.* v. *First National Bank,* 41 Conn. 421 (19 Am. Rep. 517); *Bowles Co.* v. *Clark,* 59 Wash. 336 (109 Pac. 812, 31 L. R. A. [N. S.] 613). In the last case it is said, quoting syllabus:

"The payee of a check drawn by a stranger to him is not a purchaser of the check nor a holder in due course, and if he receives it he is bound to account to the drawer upon demand."

Defendant stresses the claim that it did not receive any of plaintiff's money and in fact never had unconditional possession of plaintiff's check. But we think defendant's indorsement, which not only enabled another to cash plaintiff's check but was placed thereon for that express purpose, renders it liable the same as though defendant had obtained the proceeds of the check. This phase of the case is not unlike that in *Earle* v. *Whiting,* 196 Mass. 371 (82 N. E. 32).

"While the general rule is that this action (for money had and received) lies only where money has been received by defendant, the action may nevertheless be sustained where no money has actually

passed, but something has been received as money."
41 C. J. p. 31. See, also, 2 R. C. L. p. 782.

A payee who receives and indorses a check and
thereafter passes it to another cannot be heard to
say that the check was not delivered to him. The
negotiable instruments law of Michigan provides:

"Every person negotiating an instrument by de-
livery or by a qualified indorsement warrants:
  "Second, That he has a good title to it;
  "Fourth, That he has no knowledge of any fact
which would impair the validity of the instrument
or render it valueless." 2 Comp. Laws 1929, § 9314.

Stripped of all details, this record discloses that
by indorsing plaintiff's check defendant enabled
Richman Phipps & Co. to obtain without right plain-
tiff's money; and plaintiff may therefore look to
defendant for the loss sustained. Notwithstanding
defendant's contention to the contrary, we think the
amount of plaintiff's loss or damage is clearly estab-
lished as being the amount of the check and accrued
interest from the date of indorsement. Because
security incident to the use of commercial paper
requires adherence to the rule of the cases first
above cited, we are constrained to reverse the judg-
ment entered in the circuit court. It is so ordered,
and the case remanded with instruction to enter
judgment in accordance herewith. Plaintiff will
have costs of both courts.

CLARK, C. J., and MCDONALD, POTTER, SHARPE,
FEAD, WIEST, and BUTZEL, JJ., concurred.