PIETRO FORCHIONE, on Behalf of Himself and All Other Depositors of MICHAEL DULY, Deceased, of Rome, N. Y., Private Banker, Respondent, *v.* ROME TRUST COMPANY OF ROME, N. Y., Appellant.

Fourth Department, December 23, 1937.

*Arthur S. Evans*, for the appellant.

*Salvador J. Capecelatro*, for the respondent.

CROSBY, J.  Plaintiff sues, on behalf of himself and others similarly situated, to impress a trust upon the proceeds of certain bonds which Michael Duly had once deposited with the Superintendent of Banks as security to the depositors of Michael Duly, Private Banker.  Upon the liquidation of the private bank and the revocation of its license the bonds were returned to Duly, and he, out of the proceeds of their sale, paid defendant the amount of a note which he owed to defendant.  The judgment here is for the amount which Duly, out of the proceeds of the sale of the bonds, paid to defendant in discharge of a part of his indebtedness to defendant.

The record in the case is voluminous, the findings are numerous, some of the findings are inconsistent with others, and some are contrary to the evidence, and some are against the weight of the evidence.  But it will make for clarity and simplicity to disregard

errors in the findings excepting those relating to the one question:—whether or not defendant collected the amount of the Duly note ($2,934.51) out of the proceeds of bonds which defendant knew or should have known were charged with a trust for the benefit of plaintiff and other depositors of the Duly private bank.

The following principle of law is laid down in a case in the Court of Appeals: " ' The principle governing the defendant's liability is that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit   *   *   * without being liable to refund the money if the appropriation is a breach of the trust.' "   (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106, 112.)

The opinion in that case goes even further and holds, in substance, that the banker must be deemed to know such facts as could have been learned by making the inquiry that a careful and conscientious banker would make to discover whether funds, having the earmarks of a trust, were in danger of being diverted from their trust purpose.

This brings us to the question whether or not the defendant knew of the trust character of the bonds in question, or, lacking actual knowledge, should have known.

It is too plain for dispute that defendant had full knowledge that the bonds had once been impressed with a trust for the benefit of plaintiff and others. Defendant's correspondence with the Banking Department discloses that fact. But did defendant have any reason to know or suspect that the bonds were responsive to that trust at the time it sold the bonds for Duly's account and received a part of the proceeds in payment of its note? That is the only real question in this case.

Duly's license to operate a private bank was issued by the Superintendent of Banks January 10, 1919. Duly deposited the bonds in question with the Superintendent of Banks, in trust, for the benefit of depositors. In 1930 the Legislature amended the Banking Law (Art. IV, § 151, subd. 3) to provide that, in a city of thirty thousand or more, private bankers, those previously licensed as well as those thereafter to be licensed, must secure depositors by a deposit of $100,000 worth of securities, instead of $5,000 as theretofore. Duly was unable to respond to the new requirement, and as his bank was not too successful at best he determined to liquidate his bank. He made application to the Superintendent of Banks to have his license revoked and his bonds returned to him. It is unnecessary to recite all the details, but a few undisputed facts are important. In applying to the Superintendent of Banks for the desired relief, Duly made a sworn statement that he had paid all his bank's depositors and other creditors. Thereupon the Superin-

tendent of Banks caused an examination to be made of the bank. Exhibit 7 in the record is the written report of the examiner. Its details need not be mentioned here, but it contains statements that: " Books and records are in fair condition;" " Deposit liability has all been liquidated;" and that " according to the records, all liabilities have been liquidated." The report also contains an affidavit by Duly that the facts stated in it are true, and the report was also sworn to by the bank examiner.

The Superintendent of Banks then advised Duly that " It will be necessary for you to file a motion with the Supreme Court requesting the return of securities held by the Banking Department in trust for you as a private banker and asking for a revocation of your authorization certificate."

Such a motion was made, and again Duly made a sworn statement that his depositors were all paid. It seems that due to an amendment of section 161 of the Banking Law (Laws of 1930, chap. 679, in effect July 31, 1930) it was not necessary to secure the order of the Supreme Court. The Superintendent of Banks had authority to revoke Duly's license and return his securities in his own discretion. However, the application was made to the Supreme Court, and an order was secured directing the Superintendent of Banks to " return to Michael Duly " the bonds in question. Duly's license was revoked, his bonds were returned to him by mail, directed, however, in care of defendant. This was done because defendant had previously notified the Superintendent of Banks that it held an assignment of the bonds. It had previously taken a pledge of the bonds as collateral security to a $1,900 note on October 2, 1930. The collateral note pledged to defendant the bonds (describing them) " now deposited with Supt. of Banks, N. Y. State and to be delivered to Rome Trust Co. upon release by Banking Dept."

The $1,900 note and another debt due from Duly to defendant were paid from the proceeds of a sale of the bonds which defendant procured to be made by the Federal Reserve Bank. Defendant did not purchase the bonds upon that sale, but received the proceeds of the sale and applied $2,934.51 thereof to Duly's indebtedness to it. The remainder of the proceeds Duly had for his own use, although he still owed defendant over $5,000.

Under these circumstances a judgment has been given against defendant. In the opinion of the Special Term it is said: " There is no direct evidence that defendant had knowledge of Duly's fraud upon the Superintendent of Banks or upon his unpaid depositors and I am convinced that the defendant acted in good faith in selling the bonds for Duly and in accepting his check for $2,934.51

of the proceeds to apply on Duly's indebtedness to it. * * *
Defendant had a right to rely, to some extent, upon the audit of
Duly's books by the bank examiner, the order of the Supreme Court
directing the release of the bonds to Duly and the fact of their
release, but this was not the full measure of its duty. Before it
accepted any of the proceeds from the sale of the bonds, it should
have satisfied itself, by reasonable inquiry, that Duly had, in fact,
paid his depositors and discharged his trust." And the Special
Term gave judgment to the plaintiff, relying upon the following
New York cases which will be discussed: *Kirsch* v. *Tozier* (143 N. Y.
390); *Bischoff* v. *Yorkville Bank* (218 id. 106); *Gruntal* v. *U. S.
Fidelity & Guaranty Co.* (254 id. 468); *Spraights* v. *Hawley* (39
id. 441); *Beatty* v. *Guggenheim Exploration Co.* (225 id. 380); *Orthey*
v. *Bogan* (226 id. 234); *Zimmerman* v. *Kinkle* (108 id. 282); *Newton*
v. *Porter* (69 id. 133); *N. Y. City Employees' Retirement System* v.
*Eliot* (267 id. 193).

Before discussing these cases it should be said that the Special
Term refused to make findings which defendant requested almost
in the language of the quoted part of the opinion. But there is
this difference — the opinion absolves defendant from doing any-
thing contrary to conscience in the light of the knowledge it had,
but the findings charge defendant with wrong conduct in the light
of the things it could have learned by making the inquiry it ought
to have made.

*Kirsch* v. *Tozier (supra)* is a case where a bank took a mortgage
upon land owned by a man who, as trustee for some infants, owned
a mortgage upon his own land. The bank had knowledge that the
owner, in his capacity as trustee, discharged the mortgage in order
to clear up his title and get the loan from the bank. The mortgage
was discharged before its due date. It was held that the bank
had sufficient knowledge to put it upon inquiry as to a possible
breach of the trust owed to the infants. In speaking of the rights
and duties of one dealing with a trustee the opinion states: " It is
sufficient for his protection that he acts in good faith, * * *.
A purchaser is not required to use the utmost circumspection.
He is bound to act as an ordinarily prudent and careful man would
do under the circumstances."

*Bischoff* v. *Yorkville Bank (supra)* is a case where defendant bank
received numerous payments upon debts due it by one who was
executor of an estate, when the money with which to make the
payments was being drawn from another bank upon checks given
by the executor as such. Defendant had every reason to know
that it was being paid out of trust funds. The opinion stresses
the fact that the defendant had " actual notice or knowledge "

that it was getting its pay out of funds that were impressed with a trust.

*Gruntal* v. *U. S. Fidelity & Guaranty Co.* (*supra*) is not in point. In that case the question was whether an innocent purchaser could secure a good title of negotiable securities from a thief.

*Spraights* v. *Hawley* (*supra*) is not in point. That case merely holds that where one converts to his own use the property of another, and sells it, an agent, through whose efforts the property is sold, is likewise guilty of conversion, and is not protected by his reliance, in good faith, upon a belief in the representations of the one for whose benefit he sold the property that he was the owner thereof.

*Beatty* v. *Guggenheim Exploration Co.* (*supra*) is not enough like our case to be one of the slightest assistance here. Its only value lies in its explanation of the flexibility of the Equity Court in adapting itself to whatever forms are necessary to do equity.

In the case of *Orthey* v. *Bogan* (*supra*) we find it stated in the opinion that " the mere existence of a precedent debt is not a sufficient consideration to support a conveyance as against prior equities." Even so it is not true that defendant took an assignment of Duly's bonds without consideration. On October 2, 1930, the defendant loaned Duly $1,900 in cash, and by a collateral note took a pledge of the bonds as security. The bonds were at that time in the hands of the Superintendent of Banks, impressed with a trust for the benefit of plaintiff and others. Except for the claims of that trust the bonds were the absolute property of Duly. The collateral note did not purport or pretend to pledge the bonds free from the trust, but plainly stated that the bonds were being " deposited with said bank  *  *  * upon release by Banking Dept." Of course they could not be physically delivered until the Banking Department released them. But surely Duly had an interest in them which he could pledge, and he did pledge that interest for a then present consideration, paid in cash by defendant. The interest in the bonds which defendant took was not taken to pay a precedent debt, but was taken for value paid at the time. I cannot see that it makes any difference that, when defendant finally got actual possession of the bonds, it waived its claim to them and sold them for the account of Duly and exacted only a part of the proceeds of the sale, instead of all. Of course, there is still left the question whether or not defendant took the bonds in good faith without knowledge or notice of plaintiff's equities.

 · The case of *Zimmerman* v. *Kinkle* (*supra*) has no value to us here, for it merely passes upon the sufficiency of a complaint.

The case of *Newton* v. *Porter* (*supra*) is not in point, because it holds only that the owner of stolen property may follow it into the

hands of an innocent purchaser, and that equity may be resorted to, in case the stolen property is sold or exchanged, in order to impress a trust upon the proceeds of the sale of the property for which the stolen property was exchanged.

In the case of *N. Y. City Employees' Retirement System* v. *Eliot* (*supra*) the facts are not sufficiently like the facts in the instant case to make it helpful to us.

Of course Duly perpetrated a fraud upon plaintiff, upon the Banking Department, and upon the Supreme Court. And if defendant had been a party to the fraud, or known of it; then defendant would be liable. So, too, if defendant had had any intimation of Duly's fraud, such as would start a prudent and conscientious banker to making further inquiry, then defendant would be charged with the knowledge that such inquiry would have disclosed.

What would such inquiry have disclosed? Defendant would have found that Duly had made three sworn statements that his depositors were all paid, that the Banking Department of the State, after a personal examination of the bank and its books and records, came to the same conclusion and that the Supreme Court must have come to the same conclusion, or it would not have made its order.

What more should defendant have done? What more could it have done? Respondent suggests that it could have advertised in a newspaper to learn if there were any unpaid depositors. Would a careful man do that? In the absence of direct proof of bad faith, I think it error to find that a prudent man would go beyond the personal examination of the bank by the Superintendent of Banks, and behind the order of the Supreme Court, and resort to a paid advertisement in a newspaper.

I find no evidence in the record sufficient to support a finding that defendant was guilty of bad faith either in taking the proceeds of the bonds with knowledge of Duly's fraud, or in neglecting to make the inquiry which a careful banker would have made.

The judgment should be reversed on the law and the facts, with costs, and the complaint dismissed, with costs. Certain findings will have to be reversed and new findings made.

All concur. Present — EDGCOMB, CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.