AMERICAN SURETY COMPANY OF NEW YORK, APPELLANT, V.
SMITH, LANDERYOU & COMPANY, APPELLEE.

4 N. W. (2d) 889

FILED JULY 10, 1942.   No. 31278.

*Young & Williams,* for appellant.

*Ritchie, Swenson & Welpton* and *M. J. Flannigan, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an action by the American Surety Company of New York, as assignee, to recover from the defendant, Smith, Landeryou & Company, a corporation, stock brokers, the sum of $10,320, the amount of funds of the Fairmont Creamery Company, a corporation, received by such stock brokers from and in connection with Harold George Gould. Gould, a trusted employee of the Fairmont Creamery Company for more than 25 years, taking advantage of his situation, had unlawfully abstracted this sum from the moneys of his employer without the latter's knowledge or consent, and had used the same in his speculative investments with the defendant company as stock brokers. The principal place of business of the Fairmont Creamery Company, as well as the defendant, was in Omaha, Nebraska. At the times the defalcations in suit herein occurred, Gould, by virtue of his employment, together with other duties, was charged with securing the payment of the premiums accruing on the policies of various kinds of insurance taken out and carried by the Fairmont Creamery Company on its property and personnel, as well as on the property and personnel of some forty subsidiary organizations which were operated in connection with it. The general course of business followed may be said to be as follows: Each check issued by the creamery company's cashier was obtained by Gould on presentation of a voucher, or a request for a

voucher, signed by himself and to be approved by certain officials of the creamery company, setting forth briefly the nature of the insurance premium to be paid, to whom due, the amount thereof, and a direction that such amount in payment be charged to a certain insurance account set up by the creamery company. Thereupon such checks were duly issued in favor of such creditors, delivered to Gould, and by him transmitted to the party entitled thereto. Taking advantage of his situation and the confidence reposed in him by his employer, Gould had signed and presented false vouchers setting forth that certain sums were due to Smith, Landeryou & Company of Omaha, Nebraska, as insurance premiums, and secured the issuance of "general checks" of his employer, payable to defendant company's order, which the payee named therein disposed of as follows:

| Check Number | Date of Check | Amount of Check | Date Rec'd by Defendant | Application Credit Gould's Account | Cash or Check to Gould |
|---|---|---|---|---|---|
| 2346 | 3/16/35 | $2865.00 | 3/16/35 | $2690.00 | $175.00 |
| 2339 | 5/7/36 | $2845.00 | 5/7/36 | $2450.00 | $124.80 |
|  |  |  |  |  | $270.00 |
| 8291 | 4/6/37 | $2985.00 | 4/6/37 | $2822.70 | $162.30 |
| 24583 | 8/20/37 | $1625.00 | 8/20/37 | $1375.00 | $250.00 |

These checks, duly drawn, were, in the usual course of business, delivered to Gould for transmission, and each by him delivered to Smith, Landeryou & Company in Omaha, Nebraska, as purchase price of stocks by him purchased therefrom, and as part of these transactions he received a portion of the moneys represented by such checks in cash as above stated. It may be said that while Smith, Landeryou & Company accepted these checks payable to its order in payment of stocks purchased by Gould as an individual and for his individual profit and advantage, and knew he was an employee of the corporate maker of such checks, it had no knowledge at such times of the course of business which led up to the issuance of the checks so received by it, or of the general methods of the Fairmont Creamery Company in the transaction of its affairs, or of the rules prescribed for its government, or of the method followed by it in keeping its

accounts. Defendant company did know that it had had no stock transactions with the creamery company and that the latter was not indebted to defendant stock brokers in any sum whatever.

The plaintiff as surety for said Gould, having given the Fairmont Creamery Company its fidelity bond insuring that company against fraud and embezzlement of said Gould, accordingly by the terms of such bond paid to the creamery company the amount of the loss occasioned by Gould's peculations herein set forth, to the extent of $10,000, and received in consideration thereof an assignment from the creamery company in writing of "its claim or claims and all the right, title and interest" which it has in and to any claim or claims against Harold George Gould and against Smith, Landeryou & Company created by the transactions hereinbefore referred to. Demand is alleged to have been made on defendant for reimbursement for the amounts thus received by it.

To the petition of plaintiff setting forth at length and with particularity the transactions hereinbefore referred to, defendant joined issue. A trial in the district court, a jury being waived, resulted in findings and judgment for defendant. From the order of the trial court overruling its motion for a new trial, plaintiff appeals.

The checks here involved are the usual bank checks which are within the terms of the statutory definition. They are negotiable instruments, each signed by the Fairmont Creamery Company, a corporation, as maker, containing an unconditional order to pay a certain sum of money to the order of Smith, Landeryou & Company, a corporation, as payee, and addressed to the drawee named therein, the Omaha National Bank, Omaha, Nebraska.

A similar question presented to the supreme court of Washington in *Bowles Co. v. Clark*, 59 Wash. 336, 109 Pac. 812, was answered as follows: "The question presented by the record is indeed somewhat novel, but it has seemed to us that it cannot be solved by reference to the laws relating to negotiable instruments. The respondent was in no sense

a purchaser of the check, nor was it a holder thereof in due course, as that phrase is defined in commercial law; it was the payee named in the check, and its obligations to the drawer of the check were like those of payees in checks generally, it was obligated to account to the drawer for the check or for its proceeds. The general rule in this respect was not changed by the fact that the respondent was a stranger to the drawer and did not know the purposes for which the check was forwarded to it. If it did not care to assume the responsibility of accounting, it should have refused to receive it. By doing this it could have relieved itself of any liability whatsoever, but when it accepted the check, even though it did not know the purposes for which it was drawn, it obligated itself to account therefor. It owed no voluntary duty of accounting, perhaps, but certainly a duty to account when called upon by the drawer. To so hold is not, as the respondent's counsel seem to argue, making the respondent the drawer's debtor against its will. On the contrary, the respondent assumed that relation voluntarily. It accepted the check instead of refusing it, and it was this act that gives rise to its liability."

The applicable rule supported by the weight of authority invoked by the undisputed facts in the instant case, is: Corporate checks, payable to a firm of brokers with which the drawer has no business relations, when tendered to the brokers by an agent or employee of the drawer for his own stock transactions, import ownership of the checks and their proceeds to be in the corporation-drawer. *Sims v. United States Trust Co.*, 103 N. Y. 472, 9 N. E. 605; *Hathaway v. Delaware County*, 185 N. Y. 368, 78 N. E. 153, 13 L. R. A. n. s. 273; *Apostoloff v. Levy*, 170 N. Y. Supp. 930 (affirmed in 186 App. Div. 767, 174 N. Y. Supp. 828).

In *Apostoloff v. Levy*, 170 N. Y. Supp. 930, Weeks, J., says in part: "It is clear that the defendants, on receiving plaintiff's check drawn to their own order, had no authority to open an account in the name of any other person without instruction from him, and they were required to keep his funds until they received directions from him in regard to

them. Montgomery had no apparent title to the check, and there was no authority shown for the transfer of plaintiff's funds to him, and the defendants were therefore liable to the plaintiff for the funds represented by the check. *Sims v. United States Trust Co.,* 103 N. Y. 472, 9 N. E. 605; *Hathaway v. Delaware County,* 185 N. Y. 368, 373, 78 N. E. 153, 13 L. R. A. n. s. 273, 113 Am. St. Rep. 909; *Bristol Knife Co. v. First Nat. Bank,* 41 Conn. 421, 19 Am. Rep. 517; *Camp v. Sturdevant,* 16 Neb. 693, 21 N. W. 449."

This court was early committed to this doctrine, for in *Camp v. Sturdevant,* 16 Neb. 693, 21 N. W. 449, we announced the following: "The possession by A.H. of a bank check payable to the order of P.D.S. was no evidence to P.D.S. that said check had been drawn by the drawer and delivered to said A.H. to enable him, A.H., to obtain money or credit thereon, nor is such possession evidence to go to the jury of such fact."

See, also, as supporting the doctrine thus announced, *Wisconsin General Finance Corporation v. Park Savings Bank,* 208 Wis. 437, 243 N. W. 475, in which *Camp v. Sturdevant, supra,* is cited with approval.

Certainly, in view of the principles long established in this jurisdiction by the *Sturdevant* case, the duty to make inquiry is here imposed on the payee of the corporation checks. Such payee, having no dealings with the corporation, but receiving these instruments from an employee of such corporation for the payment of his individual obligation, is put upon inquiry as to the latter's authority to make such use of the checks. *Sheer v. Hall & Lyon Co.,* 36 R. I. 47, 88 Atl. 801; *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. n. s. 613; *Apostoloff v. Levy,* 170 N. Y. Supp. 930; *Id.* 186 App. Div. 767, 174 N. Y. Supp. 828; *McCullam v. Buckingham Hotel Co.,* 198 Mo. App. 107, 199 S. W. 417; *Smoltz v. North Waterloo Meat Co.,* 224 N. W. (Ia.) 536; *Robbins v. Passaic Nat. Bank & Trust Co.,* 109 N. J. Law, 250, 160 Atl. 418, 82 A. L. R. 1368; *Diamant v. Keane, Higbie & Co.,* 260 Mich. 261, 244 N. W. 467; *Redfield v. Wells,* 31 Idaho, 415, 173 Pac. 640.

In the instant case, the possibilities of making inquiry were at hand in the usual desk telephone. The information complete was available from a source clearly indicated by the known facts. Of this defendant failed to avail itself. A correct statement of the applicable rule is as follows: One who is placed on inquiry as to an agent's·or employee's authority, and who has reasonable means of making inquiry, occupies the same position in law as if he had actual knowledge of the employee's lack of authority, because he is charged with knowledge of the facts which the inquiry would have developed. See *Marshall v. Rowe,* 126 Neb. 817, 254 N. W. 480; *Baxter v. National Mtg. Loan Co.,* 128 Neb. 537, 259 N. W. 630; *Kuhns v. Live Stock Nat. Bank,* 137 Neb. 459, 472, 289 N. W. 893; *Forchione v. Rome Trust Co.,* 253 App. Div. 113, 300 N. Y. Supp. 1306; *Chas. A. Hill & Co. v. Belmont Heights Baptist Church,* 17 Tenn. App. 603, 69 S. W. (2d) 612; *Martin v. Federal Surety Co.,* 58 Fed. (2d) 79; *Fourth Nat. Bank of Tulsa v. Board of Commissioners,* 186 Okla. 102, 95 Pac. (2d) 878.

Under the circumstances, the defendant, having imposed upon it the duty of inquiry, and having failed to make such inquiry, which, if made, would have disclosed defects and infirmities in the title and ownership of the party from whom the negotiable paper was by it received, will be liable to the drawer for failure to hold the proceeds of such paper by it accepted, cashed and disposed of as payee, and cannot avoid the liability so incurred through its default by claiming to be a holder thereof in due course. *Redfield v. Wells,* 31 Idaho, 415, 173 Pac. 640; *Union Bank & Trust Co. v. Girard Trust Co.,* 307 Pa. St. 488, 161 Atl. 865; *State Bank of Binghamton v. Bache,* 162 Misc. 128, 293 N. Y. Supp. 667; *Norristown-Penn Trust Co. v. Middleton,* 300 Pa. St. 522, 150 Atl. 885; *Paine v. Sheridan Trust & Savings Bank,* 342 Ill. 342, 174 N. E. 368.

Nor is the defense sought to be interposed based upon the alleged negligence of the Fairmont Creamery Company in the drawing of the instruments involved, and its reliance upon and confidence in Gould in their transactions, available to the defendant.

The proximate cause of this entire adverse situation is wholly the lack of care and diligence of the defendant in accepting the checks here involved. Defendant was put on inquiry by the very forms employed. The Fairmont Creamery Company was not negligent in reposing confidence in Gould as a trusted agent and in continuing to do so until it received knowledge or information that the agent was untrustworthy. *Santa Marina Co. v. Canadian Bank of Commerce,* 242 Fed. 142; *Wheeler v. McGuire, Scoggins & Co.,* 86 Ala. 398, 5 So. 190, 2 L. R. A. 808; *Los Angeles Investment Co. v. Home Savings Bank,* 180 Cal. 601, 182 Pac. 293, 5 A. L. R. 1193; *Detroit Piston Ring Co. v. Wayne County & Home Savings Bank,* 252 Mich. 163, 233 N. W. 185; *Haswell v. Standring,* 152 Ia. 291, 132 N. W. 417; *Chismore v. Marion Savings Bank,* 221 Ia. 1256, 268 N. W. 137; *Outlook Farmers Elevator Co. v. American Surety Co.,* 70 Mont. 8, 223 Pac. 905.

Besides, in an action for conversion, such as is here presented, defendant's care or diligence is not necessarily involved, and plaintiff's negligence, if any, is not material except in so far as it may bear upon the question of estoppel. *Edwards v. Jenkins,* 214 Cal. 713, 7 Pac. (2d) 702; *Poggi v. Scott,* 167 Cal. 372, 139 Pac. 815, 51 L. R. A. n. s. 925; *United States Zinc Co. v. Colburn,* 124 Okla. 249, 255 Pac. 688; *Pine & Cypress Mfg. Co. v. American Engineering & Construction Co.,* 97 W. Va. 471, 125 S. E. 375.

"To constitute an equitable estoppel, there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice." *Walker v. Ehresman,* 79 Neb. 775, 113 N. W. 218. See, also, *Peters Trust Co. v. Cranmore,* 114 Neb. 491, 208 N. W. 635; *State v. Burrows,* 136 Neb. 691, 287 N. W. 178.

But the defendant was put on inquiry by the form of the

instruments and the circumstances under which they were received and the use it made of the proceeds derived therefrom. This invokes the application of the rule that plaintiff's estoppel by negligence does not arise in favor of a defendant who has himself been guilty of negligence. 21 C. J. 1169, 1170; *Conway Nat. Bank v. Pease,* 76 N. H. 319, 82 Atl. 1068; *Sterling Leather Works v. Liberty Trust Co.,* 88 N. J. Eq. 378, 102 Atl. 841; *Rugg Co. v. Ormrod,* 198 N. Y. 119, 91 N. E. 366; *Ward v. Trustees Methodist Episcopal Church,* 27 R. I. 262, 61 Atl. 651; *Macomber v. Kinney,* 114 Minn. 146, 128 N. W. 1001.

The conclusion follows that a defendant, in an action for conversion, even though not guilty of moral turpitude or intentional wrong-doing, other than such as was involved in its failure to perform a legal duty of inquiry, which, if made, would have disclosed the illegality of the transaction, has no equities or rights which preclude recovery by the plaintiff as assignee, even though plaintiff was a compensated surety. Courts generally are largely of the view that the paid surety, having paid the debt and satisfied the default of his principal, and also having received from the assured an assignment of all his rights and claims created and originating in and from such default, should be made whole if possible without injustice to others, and that there is no injustice in permitting him to resort to claims which the principal could have enforced against third persons and to which he might rightfully have resorted had there been no surety. See *Martin v. Federal Surety Co.,* 58 Fed. (2d) 79; *Staples v. Central Surety & Ins. Corporation,* 62 Fed. (2d) 650; *Richfield Nat. Bank v. American Surety Co.,* 39 Fed. (2d) 387; *Fidelity & Deposit Co. v. Queens County Trust Co.,* 226 N. Y. 225, 123 N. E. 370; *United States Fidelity & Guaranty Co. v. United States Nat. Bank,* 80 Or. 361, 157 Pac. 155.

We find from all the evidence that the judgment entered in the district court is not supported by the proof; that the uncontradicted facts in the record entitle the plaintiff to a judgment in its behalf as prayed. Therefore, the judgment

of the district court is reversed, and the cause remanded, with directions to enter judgment for the plaintiff as prayed.

REVERSED.